## J. R. BROOKS AND ANOTHER v. M. B. EVETTS AND OTHERS.

1. In construing wills it is a fundamental rule that the intention of the testator shall govern his devise, provided it is capable of being ascertained and is not contrary to law.

2. The word " heirs " denotes a class of persons who take by succession from generation to generation.

3. The rule in Shelley's case is a rule of law, and not a mere rule of construction.

4. A testatrix made the following devise : " After all my lawful debts are paid, the residue of my estate, real and personal, I give and bequeath to and dispose of as follows, to wit : to my sister Mary one-third of a league of land. " Here followed a description of the property devised, after which the will proceeded thus : " And all the above described property I give and bequeath to the said Mary, and her heirs during her natural life." *Held,* that it was error to construe this as a mere devise for the life of Mary, without remainder to her heirs, and to hold that on her death the estate reverted to the heirs of the testatrix. *Held further*, that the devise vested in Mary an estate for life, with a vested remainder in fee to her heirs, who took their estate as purchasers under the will and not by way of inheritance from the tenant for life ; and consequently that the tenant for life could alienate no greater estate in the property than for her own life.

ERROR from Colorado. Tried below before the Hon. L. Lindsay.

The defendants in error were the plaintiffs in the court below. The action was trespass to try title to certain lots in the town of Columbus, which were claimed and held by the defendants, J. R. Brooks and James Carlton, under title from Reuben Bonds, to whom, in consideration of three thousand dollars, Mrs. Stuteville, the tenant for life, had assumed to make a conveyance in fee.

The testatrix, Mrs. Bonds, had no children. The plaintiffs were her brother and two sisters, together with the children of Mrs. Stuteville, who had died recently before the suit was brought.

They claimed as the heirs of Mrs. Bonds, entitled by reversion to the property, after the death of Mrs. Stuteville. Reuben Bonds was the husband of the testatrix, and survived her, but died prior to Mrs. Stuteville.

A jury was waived, and the cause submitted to the court below upon the will and an agreed state of facts. The judgment was that the brother and two surviving sisters of Mrs. Bonds recover one-eighth each of the lots in controversy, but that the children of Mrs. Stuteville recover nothing. The reasons of the judgment are not expounded in it, but it is obvious that the court below held that only a life estate passed to Mrs. Stuteville under the will, and that the reversion in fee enured to the heirs of the testatrix, whose surviving husband would have been entitled to one-half, and her brothers and sisters to the other, had there been no alienations; but that Mrs. Stuteville's eighth passed to Reuben Bonds by her deed to him, and along with his half vested in the defendants by his deed to them.

There were question of rents and profits on the one hand and of valuable improvements on the other, but there is no occasion to notice them.

The theory of the defendants was that by the provisions of the will and the operation of the rule in Shelley's case, an estate in fee was vested in Mrs. Stuteville, and had passed from her to them by the conveyances already mentioned; so that their title was to the whole, and not to five-eighths. Wherefore they sued oat their writ of error.

The children of Mrs Stuteville, taking a different view of their rights than that of the petition in which they were joined as plaintiffs, also assigned errors, in which they assert their title as remaindermen under the will.

No brief for the Stuteville children has reached the Reporter.

*R. V. Cook*, for Brooks & Carlton.—I. The district judge held that Mary A. Stuteville, the devisee, took only a life estate, with remainder to the heirs of the testatrix. It is respectfully submitted that this ruling was error. Upon behalf of the plaintiffs in error it is contended that the words of devise conveyed to Mary A. Stuteville an estate in fee simple; and that the limitation to the heirs vested the fee in the ancestor. And in support of the position these authorities are relied upon : Kent's Com., vol. 4, 215, marg., *et seq.*; Fearn on Remainders, vol. 1, 42; Preston on Estates, vol 1, 263, 419; Stephenson v. Hagan, 15 B. Monroe, 282; Kay v. Conner, 8 Humph., Tenn., 624; Jarmon on Wills, Perkins' ed., vol. 1, 394, 396, 400; Idem, vol. 2, 527, rule 19; Burrill's Law Dic., 429, 2 Ed.; Bouvier, *vide* " Heir ;" Hancock v. Butler, 21 Texas Reports, 804.

II. The judge erred in ruling that the defendants below were not entitled to the value of their improvements, excepting in so far as the same might go towards the extinguishment of rents.

Because, even reposing upon the hypothesis of the judge in his interpretation of the will, (which I think is erroneous,) the parties were tenants in common or joint tenants, and in the eyes of equity proportionately chargeable with the value of the improvements put upon the premises by the tenant in actual legal possession. (*Vide* Story's Equity Jurisprudence, 4 ed., 728, § 624, and cases cited.)

" Where land is charged with a burden, each party ought to bear its due proportion of the charge. And equity will compel each party to a just compensation." (Stevens v. Cooper, 1 Johns. Ch. R., 409 ; Taylor v. Porter, 7 Mass., 355.)

*Hancock & West*, also for plaintiffs in error.

*Barnard, Foard & Thompson*, for the defendants in error.— The first question to be determined by the Supreme Court is the proper construction of the will of Elizabeth J. Bonds, and after

that construction is had, the rights and equities of the different claimants in the property sued for.

The court below held : First—That the will of Mrs. Bonds conferred upon Mary A. Stuteville a life estate, and that, after the determination of that estate, the property was inherited by the heirs of the testatrix, who were the husband of the testatrix, and her brother and sisters.

Second—That the word heirs in the will meant the children of Mrs. Stuteville, and that they were entitled with their mother to the life estate, but that the conveyance from Mrs. Stuteville and her husband to Reuben Bonds also carried the interest of these children, and they were not entitled to recover for the use of the property up to the date of the death of their mother.

Third—That the defendants were not entitled to the value of their improvements, placed by them on the property previous to the death of Mrs. Stuteville, except so far as to extinguish the rents and profits, it being admitted by the plaintiffs that said improvements were in excess of the value of the rents and use.

Fourth—That the children of Mrs. Stuteville had no interest in the property.

The defendants and the children of Mrs. Stuteville both gave notice of appeal. This suit is brought up by the defendants, and the children have assigned cross errors.

The court in construing a will endeavors to get at the intent and meaning of the testator, and for this purpose parol testimony is admitted to show the surroundings of the testator, his circumstances, family connexions, etc. So far as practicable, it will stand in the shoes of the testator, and this for the purpose of discovering his true meaning. These principles of construction are elementary, and laid down in all the books. (4 Kent's Com., marginal page 535.)

It is also an elementary principle that, where the latter part of the will is inconsistent with the prior part, the latter part will pre-

vail.   This rule is as ancient as the time of Lord Coke, (Co. Litt., 112*b*,) and was thoroughly examined and declared by Lord Brougham, in Sherratt v. Bently, 2 Mylne & Keene, 149 ; Fraser v. Boone, 1 Hill S. C. Ch. R., 367, S. P. ; 1 Phillips, Ch. R., 533.

In the construction of wills, the word heirs is frequently construed to mean children.   (See 2 Story's Equity Jurisprudence, Art. 1065*b* ; 2 Jarmon on Wills, pp. 16 and 17, chap. 29 ; Bowers v. Porter, 4 Pick., 148 ; Simms v. Garrett, 1 Dev. & Bat. Equity, 393.)

Words and clauses in a will are often transposed when it can be done consistent with the context of the will.   (1 Jarmon on Wills, marginal page 438, and following pages.)

Now examine the surroundings of Mrs. Bonds at the date of her will.   She had no children ; her husband, Reuben Bonds, was living.   She had also one brother and three sisters, one of whom was Mrs. Stuteville, who was married and had four children, the eldest about fourteen, the youngest about four, and the said sister and family were in very limited circumstances.

It is self-evident that Mrs. Bonds did not intend her property to go to her husband.   What reason actuated her we can't tell.   It is also self-evident that she wished to confer a benefit upon her sister, Mrs. Stuteville.   The reasons are plain, as her sister was poor, and with a large and growing family.

It is reasonably certain that she did not intend that her brother or remaining sisters should enjoy her property, or that she expected them, in conjunction with her husband, to inherit the property after the death of her sister, Mrs. Stuteville.

There can be no doubt that the court below was correct in holding that the word heirs in the will meant the children of Mrs. Stuteville.   This appears sufficiently from the surroundings of the testatrix, her evident desire to aid Mrs. Stuteville, her passing over the claims of her brother and remaining sisters, and her husband, the ages of the children, and the circumstances of their mother.

Again, the word heirs in the will is senseless and useless unless it refers to the children of Mrs. Stuteville, and we must conclude that the testatrix meant to attach some meaning to the word.

Assuming, then, that the word heirs in this will means children, and the purpose of the testatrix being evident to benefit the children, as well as Mrs. Stuteville herself, we ask is the object of the testatrix perfected by bestowing the property on the mother and children for the life of the former? The children could have been as well provided for, if the estate had been given to their mother alone for life, and as the testatrix intended to confer a benefit on the children, we conclude that her object was to convey the remainder in fee on them after the life estate of their mother, and in order to carry out this manifest intention, that the court would be justified in transposing the word heirs, and read the will as if the property had been given to Mrs. Stuteville for her natural life, and afterwards to her heirs; and if the will so read, we contend that the word heirs would have been words of purchase, and the children would get the remainder in fee. (See Hancock v. Butler, 21 Texas R., p. 805)

The defendants contend that the will of Mrs. Bonds comes within the rule of Shelly's case, and that a fee is conferred upon Mrs. Stuteville by the use of the technical word heirs. That such a position is untenable, it is only necessary to refer to the definition of that celebrated rule as laid down by Chancellor Kent in fourth volume Kent's Com., marginal page 215, § 4, chap. lix.

There is a great difference in a grant or devise to A. for his life, and after his death to his heirs, and one to A. and his heirs during the natural life of A. In the latter case put, it is true that A. takes an estate for his life, but the remainder is not limited mediately or immediately to the heirs of A. The fee remains in the testator or grantor indisposed of.

But what of this rule in Shelly's case? Chancellor Kent, in his Com., fourth volume, marginal page 538, says: "In New York

XXXIII—47

it is declared by statute that every grant or devise of real estate shall pass all the estate of the grantor or testator, unless the intent to pass a less estate or interest shall appear by express terms, or be necessarily implied;" and these provisions, says Judge Kent, relieve the courts of New York from the study of a vast collection of cases, and from yielding obedience any longer to the authority of many ancient and settled rules which were difficult to shake and dangerous to reverse.

The common law was adopted in the Republic of Texas in the year 1840, and at the same time of its adoption an act was passed similar to the one cited above from New York, which provided in substance that the word heirs was not necessary to be used in a will or deed to convey a fee.  (See Paschal's Digest, Art. 999.)

The only case, so far as we have been informed, in our Supreme Court Reports, touching upon this intricate branch of the law, is that of Hancock v. Butler, 21 Texas, p. 805.  In that case the court construed a conveyance or deed of gift, in which personal property was conveyed to Josiah Hancock for his natural life, and at his death to his lawful issue forever.

The opinion of Judge Roberts is very learned and very elaborate; and although the deed of gift was executed in South Carolina, where the strict common law has always prevailed, and where the rule in Shelly's case is recognized as fully as in England, and the deed applied to personal property, and though it was a conveyance and not a devise, yet Judge Roberts held that Josiah Hancock took only an estate for his life, and his children under the name of lawful issue claimed and held as purchasers.

Judge Roberts, in his opinion, admits, and so says Chancellor Kent, and all text book writers in these modern days, that the courts of the United States are gradually but surely departing from the technical and celebrated rule laid down in Shelly's case.  He says truly that the same reasons do not exist for upholding the rule in this country as in England ; and the only serious error we per-

ceive in his opinion is that he intimates that the rule is in force in Texas. Now we contend that this rule never was the law in Texas. It was unknown to the civil law, and it derives its force, strength and vitality from the technical meaning of the word heirs, which word in the common law was necessary to be used in order to carry a fee simple. The very session of the Legislature which adopted the common law, also deprived the word heirs of its peculiar technical strength as known to the common law, and the word used in deeds or wills neither increases nor diminishes the estate granted or devised.

The word heirs, as used in the will of Mrs. Bonds, did not enlarge the estate given to Mrs. Stuteville. The testatrix, who perhaps never heard of the rule in Shelly's case, but may have known that it was unnecessary to use the word heirs in order to bestow the property on Mrs. Stuteville in fee, did probably use that word as referring to the children of Mrs. Stuteville ; and this is another circumstance showing that the idea in the testatrix's brain was to benefit the children of her sister as well as the sister herself.

That this cause does not come under the rule of Shelly's case is too plain for argument. In the courts of England, even, when the rule was in its youth and vigor, it could never have been held that the fee simple by this will was conferred on Mrs. Stuteville.

And in the State of Texas, where the rule, we contend, is unknown, and in which State we hope it will forever remain unknown, we feel no doubt in holding that, if this will had conveyed this property to Mrs. Stuteville for her natural life, and after her death to her heirs, that then said heirs would be considered words of purchase, and Mrs. Stuteville would only have taken a life estate. The case of Hancock and Butler in our opinion so decides.

Judge Lindsay thought that our statute had done away with the rule, that the case, independent of the statute, did not come within the rule, and that the word heirs in the will meant children.

If the will conferred on Mrs. Stuteville a life estate and on her children an estate for the life of their mother, then we consider that the children were justly entitled with their mother to the estate, and without an order of court, but merely as the natural guardian of her children, she could not dispose of their interest to Reuben Bonds, and neither did the conveyance of her interest carry that of her children, and consequently we must be right in our position that said children are entitled to receive their portion of the rent and profits from the persons who used and occupied the lands from the date of their purchase from Mrs. Stuteville till her death.

We think the court did not err in deciding that the purchasers of Mrs. Stuteville's life estate in the property could not recover for the value of the improvements placed by them on the land previous to her death, though we think it did err in holding that the plaintiffs were not entitled to rent after the death of Mrs. Stuteville.

The purchasers from Mrs. Stuteville cannot claim to be joint owners of the estate with those entitled to the fee, nor tenants in common with them; in which cases equity might have allowed them on the partition of the estate the value of their improvements. They were only the owners of a life estate; the will under which they claim fully notified them of the interest they got from Mrs. Stuteville. They cannot claim for these reasons to be innocent purchasers without notice, or purchasers in good faith.

It would indeed be an alarming doctrine to hold that the owner of the estate for years or life could place whatever improvements he pleased on the premises, and compel the remainder man to pay for them. How easy for the remainder man to be improved out of his estate; and the owner of the fee might be placed in the situation of that gentleman we have heard so much of, who drew the elephant as his prize.

Sir William Blackstone in his book 2, chapter 8, page 95, says

that the tenant for life hath a right to the full enjoyment and use of the land and all its profits during his estate therein, but he is not allowed to cut down timber, or to do other work on the premises ; and if a tenant for life sows the lands and dies before harvest, his executors shall have the emblements or profits of the crop, and emblements (see note 3,) are defined to be corn, peas, beans, tares, hemp, flax, and annual roots, as parsnips, carrots and turnips.

See also Kent's Commentaries, vol. 4, marginal page 73 and following pages, which lays down the same law in relation to the rights and also the duties of tenants for life.

In the case of Caldicott v. Bowers, 2 Hare, 144, cited in the foot notes on marginal page 76, Kent's Com., 4 vol., the very point at issue was decided in accordance with the view we here take of the law. It was held in that case that a tenant for life cannot lay out moneys in building or improvement on the estate, and charge it to the inheritance. The Court of Chancery will not sustain an inquiry whether the improvements have been beneficial. The tenant makes them at his own hazard.

In conclusion, we say that it was certainly the intention of the testatrix to give a life estate in the premises to her sister, Mrs. Stuteville, and the remainder in fee to the children of Mrs. Stuteville; and if otherwise held, the object of the testatrix is defeated, and the property goes to the parties whom it is evident she did not wish to enjoy it, viz., her husband and her remaining sisters and brothers; and those very persons for whom she seemed most anxious to provide are cut off from the bounty.

In no event does the will convey a fee simple title to Mrs. Stuteville, and in no event can the defendants recover more than already given them.

WALKER, J.—In this case we are called on to construe the following testamentary clause in the will of Elizabeth J. Bonds, which bears date April 23, 1858:

" After all my lawful debts are paid and discharged, the residue of my estate, real and personal, I give and bequeath to, and dispose of, as follows, to-wit: to my sister, Mary A. Stuteville, one-third of a league of land," etc.

This is followed by an inventory and description of the property devised, including the land in controversy; after which are the words following: " And all the above described property I give and bequeath to the said Mary A. Stuteville and her heirs during her natural life."

It is a fundamental rule in the construction of wills that the intention of the testator shall govern his devise, if not contrary to law, and capable of ascertainment.

The district judge before whom this case was tried so construed the devise as to give a life estate to Mary A. Stuteville, without remainder, vested or contingent, but with a reversion to the heirs of the testator; thus holding that no fee passed under the devise, and it would seem ignoring the word "heirs," as well as the rule in Shelly's case. (Reports, 1 vol., 104.) We think this was an erroneous construction.

The word "heirs" refers to a class of persons who take by succession from generation to generation. A limitation to heirs entitles the ancestor to the whole estate. (4 Kent, 215.) In Hancock v. Butler, 21 Texas, 807, the court say, " this result would follow, although the deed might express that the first taker should have a life estate only."

This case is unquestionable authority in the case at bar. The rule in Shelley's case is a rule of law, and not a mere rule of construction. The unpopularity of the rule in several of the States of this Union has led to its repeal by statute, as in the State of Ohio, (Swan's Statutes, 999, § 47,) the rule as to wills is abolished. In King v. Beck, 15 O. Rep., 561, *et seq.*, the rule in Shelly's case is severely criticised by that able jurist, Judge Reed. He says: " We must not start out with a presumption that it

was the design of the testator to create an estate tail, and construe the words of the will to effect that object.    That was only a family law in England, designed to build up families, cheat creditors and prevent forfeitures, and in no wise consistent with the spirit and genius of our own government and laws, or the habits and feelings of our people.

" Our statute forbids it, and such I believe is the case in all, or nearly all, the States in this Union.    Nor is there with us any disposition to strain a point to bring a case within the operation of the rule in Shelly's case, a rule which had its origin in feudal tenure, and was first adopted to secure to the lords the profits and perquisites incident to inheritances ; and, as an after thought the additional reason, that it was necessary to prevent an abeyance of the fee.    It is at best a mere artificial technicality ; and just in proportion as it lacks reason, it appears to have won upon the affections of the profession.    In its simplicity, it possesses some sense, and to that extent we have adopted it as a rule of property in Ohio.    But it is the high and imperative duty of this court to conform its judicial decisions, when we attempt to walk by the light of precedent from another country, to the nature of our own government and free institutions."

A court sitting in a State where the rule in Shelly's case was abolished by statute could use the foregoing language ; and it would be gratifying to us if we too could throw away all presumptions in favor of estates tail, and show no affection for the rule in Shelly's case—but we are compelled rather to follow the decision in Hancock v. Butler, and the earlier Ohio cases.    (See McFeely's Lessee v. Moore's Heirs, 5 O., 465; Armstrong v. Zane, 12 O., 287, and King v. King, Ib., 390.)    These cases hold that a devise to A. for life, and after his decease to the heirs of his body, and failing heirs at his decease then over, was an estate tail in A. These cases were overruled in King against Beck, 15 Ohio, 539. The doctrine of this case is that a devise to one and his heirs, to

be used by the devisee for life, with remainder over to a third person, will not vest the fee in the devisee under the rule in Shelly's case, if such construction would defeat the manifest intentions of the testator.

The word heirs is sometimes construed to mean children or even legatees.

We are satisfied in this case to adopt the reasoning of the learned judge in King v. Beck, for we are clearly of the opinion that it was the intention of the testatrix to give to her sister, Mrs. Stuteville, an estate for life in the property devised, with a vested remainder to her heirs—for it is *her* heirs, to wit, the heirs of Mary A. Stuteville, who are to be the beneficiaries under this will, and not the heirs of Mrs. Bonds, the testatrix, as the district judge supposed.

Had it been the intention of the testatrix that upon the death of her sister the estate should revert to her heirs, we think that they would have been named as reversionary legatees.

Under this construction of the will of Mrs. Bonds, Mrs. Mary A. Stuteville conveyed by her deed of June 10, 1858, to Reuben Bonds an estate for her own life, and at her death the estate of the plaintiffs in error terminated, and the fee, discharged of the precedent estate, vested in the right heirs of Mrs. Stuteville.

The judgment of the district court is reversed and the cause remanded, to be proceeded in in accordance with this opinion.

Reversed and remanded.