Shimer v. Mann.

---

No. 10,423.

## SHIMER v. MANN.

WILLS.—*Construction.*—*Rule in Shelley's Case.*—A devise of the rents and profits of lands to M. until his youngest child shall become of age, "upon the happening of which event the fee simple of said lands shall then vest absolutely in said M. and his heirs, and may by him or them be disposed of as he or they may judge best for his or their interest," vests in M. an estate in fee simple when his youngest child reaches full age, there being nothing in the context or situation of the parties plainly indicating a different intention.

SAME.—*Changing Words.*—It is only in the clearest cases that courts will undertake to substitute or change the words of a will.

SAME.—*Effect of term "Heirs."*—When the term "heirs" clearly appears to be used as descriptive of a class who are to take as devisees, the fee will not vest in the first taker, but where the word is connected with the name of the first taker, it carries the fee, unless it clearly appears that it was not used in its ordinary legal signification.

From the Superior Court of Marion County.

*A. C. Ayres, E. A. Brown* and *E. C. Buskirk,* for appellant.
*G. W. Spahr* and *P. W. Smith,* for appellee.

ELLIOTT, J.—On the 12th day of May, 1856, Lydia Lathan executed her last will, containing these provisions:

"Item: I give, devise and bequeath to my late husband's nephew, Samuel B. Mann, all my personal estate, except my family Bible, which I give and bequeath to my niece, Martha Bane.

"Item: I give and bequeath to the said Samuel B. Mann the rents and profits of twenty (20) acres of land situate, lying and being in Warren township, Marion county, Indiana, near and adjoining to the lands of Esquire Shimer, until the youngest child of the said Samuel B. Mann shall become of age, upon the happening of which event it is my will and pleasure that the fee simple of said land shall then vest absolutely in the said Samuel B. Mann and his heirs, and may by him or them be disposed of as he or they may judge best for his or their interest."

The Samuel B. Mann named in the will was the nephew of the testatrix, and, at the time the will was executed, had three children living, Loren, James and Harvey L. Mann. Lydia Lathan died on the 13th day of June, 1857, and at the time of her death her nephew and devisee had no other children than those named. Of these the appellee was the youngest. In February, 1865, Samuel B. and Loren Mann united in a warranty deed purporting to convey the land to the appellant. The appellee arrived at full age in August, 1873, and instituted this suit for partition, claiming an undivided one-third of the land.

The right of the appellee to maintain his claim depends upon the construction of the will of Lydia Lathan. The ruling question in the case, shortly stated, is this: Does the will devise to Samuel B. Mann an estate in fee vesting absolutely when his youngest child attains full age, or does it vest the fee jointly in him and his children living at the time of the death of the testatrix?

Where a deed or a will uses the word "heirs," and uses it in its ordinary legal signification, a fee is vested in the first

taker.   This is the effect and force of the rule in *Shelley's Case,* 1 Co. 88, and that rule enters into our law as a rule of property.   *Sorden* v. *Gatewood,* 1 Ind. 107 ; *Doe* v. *Jackman,* 5 Ind. 283 ; *Siceloff* v. *Redman,* 26 Ind. 251 ; *McCray* v. *Lipp,* 35 Ind. 116 ; *Andrews* v. *Spurlin,* 35 Ind. 262 ; *Gonzales* v. *Barton,* 45 Ind. 295 ; *Maxwell* v. *Featherston,* 83 Ind. 339.   If the will under discussion is governed by that rule, Samuel B. Mann, the first taker, took an estate in fee.   Whether the will is or is not governed by that rule depends upon the answer to the question whether there is anything in the situation of the parties, or in the context of the instrument, plainly indicating an intention to assign to the words of limitation a meaning different from their ordinary legal signification.

There is a material difference between deeds and wills, and much more liberality is exercised in the construction of the latter instruments than in the former, for, where a will is presented for construction, the chief effort of the courts is to discover and carry into execution the intention of its author, and to this end minor considerations are subordinated.   *Brooks* v. *Evetts,* 33 Texas, 732.   But, while this is true, it also true, that where words of definite legal meaning are employed, they will be assigned that meaning, unless the context of the instrument makes it plain that the testator employed them in a different sense.

In *Nelson* v. *Davis,* 35 Ind. 474, the court quoted the statement of Chancellor WALWORTH, made in *Schoonmaker* v. *Sheely,* 3 Denio, 485, that "The word children, in its primary or natural sense, is always a word of purchase, and not a word of limitation; and the word issue is very frequently a word of purchase also.   But heirs, and heirs of the body, are in their primary and natural sense words of limitation, and not of purchase."   The definition adopted by the Chancellor is one that has long been recognized and accepted by the courts, and the strictness with which they have adhered to this definition has exercised a potent influence upon the disposition of lands by deeds and wills.   2 Redf. Wills, 67 ; 3 Jarman Wills (5

Am. ed.) 115. The word "heirs" written in a deed or will is one of great power, and its force is not impaired by the mere use of negativing or restraining words. Fearne expresses this doctrine in very strong words, for he declares that "the most positive direction" will not defeat the operation of the rule in *Shelley's-Case*. 2 Fearne Remainders, section 453. It may be that this statement of the law is somewhat too strong under the doctrine of later cases, but certainly the law is that mere negativing words can not restrain or impair the force of the word "heirs." 3 Jarman Wills (5 Am. ed.) 115.

We have no doubt that the word "heirs" may be construed to mean children where it is plain that the testator employed it in that sense. *Ridgeway* v. *Lanphear*, post, p. 251; *Hull* v. *Beals*, 23 Ind. 25; *Star Glass Co.* v. *Morey*, 108 Mass. 570; *Scott* v. *Guernsey*, 48 N. Y. 106; *Urich's Appeal*, 86 Pa. St. 386; S. C., 27 Am. R. 707; *King* v. *Beck*, 15 Ohio, 559; *Guthrie's Appeal*, 37 Pa. St. 9; *Jordan* v. *Adams*, 9 C. B. (N. S.) 483; *North* v. *Martin*, 6 Sim. 266. While it is true that the word "heirs" may be explained to mean children, it is also true that this meaning can not be assigned to the word unless it very clearly appears that it was employed by the testator in that sense. The courts have used very strong language upon this subject. In one case Lord REDESDALE said: "The rule is, that the technical words shall have their legal effect, unless, from subsequent inconsistent words, it is very clear that the testator meant otherwise." *Jesson* v. *Wright*, 2 Bligh (H. L. Cas.) 1, 56. Stronger still is the statement of Lord DENMAN, who said: "Technical words, or words of known legal import, must have their legal effect, even though the testator uses inconsistent words, unless those inconsistent words are of such a nature as to make it perfectly clear that the testator did not mean to use the technical words in their proper sense." *Doe* v. *Gallini*, 5 Barn. & Adol. 621. Redfield says: "Conjecture, doubt, or even equilibrium of ap-

parent intention, will not suffice." 2 Redf. Wills (2 ed.) 67; *Guthrie's Appeal, supra; Jordan* v. *Adams, supra; Poole* v. *Poole*, 3 B. & P. 620; *Doebler's Appeal*, 64 Pa. St. 9.

The language employed by the testatrix in the final clause of the last item of the will is, " upon the happening of which event it is my will and pleasure that the fee simple of said land shall then vest absolutely in the said Samuel B. Mann and his heirs, and may by him or them be disposed of as he or they may judge best for his or their interest," and this clause certainly does not evince an intention to use the word "heirs" as meaning children; so far, indeed, is it from doing this that it does the exact opposite, for it in terms vests a fee in Mann and his heirs and declares that he may dispose of the estate, or that his heirs may do so. If we ascribe to this language its usual force and effect, we are carried to the conclusion that the testatrix intended, that upon the happening of the designated event Samuel B. Mann should be invested with an absolute power of disposition, but that if he died without exercising this right, then his heirs should be invested with it, and this conclusion makes it apparent that the word "heirs" was employed in its technical sense. The right of disposition is first vested in Samuel B. Mann, and this is in exact agreement with the technical import of the term "heirs," as well as with the phrase, "the fee simple of said land shall then vest absolutely in the said Samuel B. Mann and his heirs." The language employed in describing the power of alienation does not import a joint power, but a several one; for the disjunctive form of the conjunction is used, and the effect is to declare that either may dispose of the estate, postponing, however, the rights of those who may become heirs to those of the person first named. As Mann could have no heirs during his life, the power of disposition was first and fully in him as the first taker, and in his heirs only upon his decease, and, without any express provision to that effect, this would have been the force of the words "fee

simple" as well as of the word "heirs." 1 Preston Estates, 71, 72, 73.

Superadded words, which merely describe or specify the incidents of the estate created by such a word of limitation as "heirs," do not cut down the interest of the devisee. If we regard as explanatory the words which follow the term· "his heirs" in the will under examination, then, unless we wrench them from their natural meaning, we must treat them as more specifically describing the duration of the estate devised, for these words do not detract from the force of the word "heirs," but, if that be possible, add to its force, because they describe an absolute power of alienation, which is one of the chief incidents of the estate which the use of the word "heirs" operates to create. It may not have been necessary to describe a power incident to the estate created, but that an unnecessary thing was done can not break the force of what the books often say is "a powerful word." "The proper and technical mode of limiting an estate in fee simple," says Mr. Jarman, "is to give the property to the devisee and his heirs or to him, his heirs and assigns forever." 3 Jarman Wills, 30. These words were here used, and, as we have seen, it is the duty of the courts to affix to technical words their usual meaning, unless there is a clear manifestation of a purpose to use them in a different sense, and here the explanatory words, instead of manifesting such a contrary intention, exhibit an entirely different one, for they particularize incidents of the very estate which the technical words describe and devise.

It is contended that the word "or" should be read as "and" where it occurs in the clauses regarding the disposition of the land devised to Samuel B. Mann and his heirs. It is unquestionably true that the word "or" may often be assigned a conjunctive instead of a disjunctive effect. 1 Redf. Wills, 471; 1 Jarman Wills, 419. But changes of this nature are only made where it is clearly necessary to effectuate the intention of the testator, or give meaning and force to the will.

The rule has long been settled that the word "or" will be read "and" when it is necessary to give effect to the words creating an estate of inheritance, but we know of no case holding that the word "or" will be read "and" for the purpose of defeating the effect of words accurately and clearly devising an estate of that nature. *Right* v. *Day*, 16 East, 67; *Read* v. *Snell*, 2 Atk. 642; *Harrison* v. *Bowe*, 3 Jones Eq. 478. The word "heirs" is one of dominating force, and it may sometimes compel a change of subordinate connective words, but connective words can not be changed when they are in harmony with the controlling provisions of the will; much less can they be changed when the ruling words of the instrument would be weakened or obscured by the change. 1 Preston Estates, 367. It is only in clear cases that courts ever venture to make changes. No word, great or small, can be changed, except, to borrow a phrase from Redfield, upon "the clearest certainty." 1. Redf. Wills, 471; *Holcombe* v. *Lake*, 4 Zab. 686.

It is no slight obstacle to the success of the appellee that it becomes necessary for him to require that the courts wrench the well known term "heirs" from its legal meaning, and also change the words of the will by substituting words not found in it for those that are. The obstacle is all the greater, because the explanatory words of the instrument fully harmonize with its technical terms, and add to their force, thus tending, with great power, to show that the intention of the testator was to devise just such an estate as the technical words employed would do if they stood alone.

The devise of the income of the land to Samuel B. Mann until his youngest child shall become of age is neither unintelligible, nor is it inconsistent with the theory that the testatrix intended that he should take a fee upon the happening of that event, nor does it even make an unreasonable testamentary disposition of the land. It is perfectly reasonable to presume, what, in truth, the language plainly imports, that the testatrix meant to deprive him of the power of disposing

Shimer v. Mann.

of the property so long as his children were unable to make
their way in the world, so that he should have means of sup-
porting them that he could not fritter away or lose by spec-
ulation or mismanagement.   It may well be that she meant
that as long as his children were not of age the power of dis-
position should be fettered, and that as soon as they attained
full age he should have complete power over the property to
do with it as he chose.   Such a scheme of testamentary dispo-
sition is quite intelligible and perfectly reasonable, and in this
instance entirely consistent with the whole frame and tenor
of the will.   More apt technical words to vest an estate, ripen-
ing into an absolute and unconditional fee upon the happen-
ing of a prescribed condition, could not have been chosen, than
those adopted, and these words are in harmony with the gen-
eral scheme evidenced by the whole tenor of the instrument
by which the testatrix declared her intention regarding the
disposition of her land.

The only persons designated as devisees, direct or remote,
are Samuel B. Mann and his heirs.   There is not a word ex-
pressive of an intention to give to him and to his children.
The youngest child is not mentioned as a devisee, nor is any
child ; the reference to the youngest child is simply for the
purpose of confining the conditional devise to a fixed time,
namely, the time when that child attains full age.   It is only
in this connection that the word " child " is used ; it is not
used as descriptive of the object of the testatrix's bounty ; it
is simply used as marking the time when the devisee's estate
shall ripen into an absolute fee simple.   It is declared that upon
the event of the youngest child's attaining full age, the fee
simple of said land shall then vest absolutely in said Samuel B.
Mann and his heirs ; but it is not intimated, directly or indi-
rectly, that it shall vest in him and his children.   It would be
a violent stretch of judicial power to thrust in devisees neither
named nor described in the will.   Had the word " child " been
used for any other purpose than that of fixing the time when
the estate should enlarge into a fee, there would be much

more force in the contention of the appellee, but it was used for that and no other purpose.

It is by no means uncommon to affix conditions to a devise, and a less estate may be granted to continue until the happening of a prescribed event, then to enlarge into an absolute fee. This is what the will now before us does. In the present case both the particular estate and the remainder are in Samuel B. Mann, and the only doubt is whether the estate can be said to have ever been a defeasible one. *Boraston's Case*, 3 Coke, 19; *Goodtitle* v. *Whitby*, 1 Burr. 228; *Doe* v. *Lea*, 3 T. R. 41; *Doe* v. *Ewart*, 7 Ad. & Ell. 636; *Roome* v. *Phillips*, 24 N. Y. 463; *Phipps* v. *Ackers*, 9 Cl. & F. 583; *Edwards* v. *Hammond*, 3 Lev. 132.

It is the theory of the law that the particular estate and the remainder form one united estate, and that the whole estate issues out of the grantor at the same time, and if this be true, as it undeniably is, it would seem that the fee vests at once in the person to whom both the particular estate and the remainder are devised. 2 Washb. R. P. (4th ed.), 582, 596; 4 Kent Com. (12th ed.) 199; *Brattle Square Church* v. *Grant*, 3 Gray, 142; 2 Bl. Com. 166.

We need not, however, decide the question whether the estate in fee vested absolutely in Samuel B. Mann at the time of the testatrix's death, for, conceding that he took only a conditional fee, still, as the condition upon which the estate was granted had happened, his rights became absolutely vested. If the estate was a conditional fee, it became absolute when the contingency arose which destroyed the force of the condition. 1 Preston Estates, 476. We think that the devise must be regarded as creating a conditional or limited fee, restricting the right of alienation until the youngest child of the devisee arrives at full age.

A conditional fee may be created by a will as well as by a deed, and, as Preston says, " The existence of the condition precludes the estate of that simplicity which is the essential quality of a fee simple." 1 Preston Estates, 475, 476. The ex-

istence of a condition subsequent does not, however, destroy the inheritable character of the estate. In the devise contained in the will before us, the condition is one restraining the power of alienation until a definite and specified time. Conditions like the one written in this will are effective, for they do not unreasonably restrict the power of alienation. *Langdon* v. *Ingram*, 28 Ind. 360; 1 Washb. R. P., top p. 80, side 54.

Counsel for appellee assert that " There is no question that the will gives to Samuel B. Mann a fee simple to an undivided part. The only question is whether Samuel B. Mann became vested with a fee simple title to the whole." The difficulty of maintaining the appellee's position is, that all the granting or devising words in the will import a several right in the devisee named, and do not imply a joint estate in him and others. *O'Brien* v. *Heeney*, 2 Edw. Ch. 242. To sustain this position all the words importing a several estate must be changed so as to make them describe a joint estate. To reach this conclusion it is not only necessary to change the word " or " into " and," but it is also necessary to change the singular pronoun " he " into the plural " they." We have already seen that changes are never made unless there is an imperious necessity, and there is here no such necessity; for the general frame of the will indicates an intention to make the devisee named the recipient of the bounty of the testatrix. But there are also the words " Samuel B. Mann and his heirs," still further manifesting, and in the most appropriate legal terms, the intention to bestow the estate upon one person and not upon three persons.

It is said that no one can have an heir during his life, and, therefore, that the words " his heirs " mean his children. The premise is true, but the conclusion does not follow. A devise to a man and his heirs vests an estate of inheritance which will go to the legal heirs, whether they are children or other kinsmen. At common law the word " heir " or " heirs." was the strongest term that could be used to create a fee, and in many cases was indispensably necessary to create such an

estate. It can not, therefore, be logically possible that because the term "heirs" is used the devise is limited to children and the estate of the first taker cut down to an estate for life. If this conclusion be just, then for many centuries courts and authors have given a radically erroneous meaning to the words "his heirs."

The argument that, because the devisee named has living children at the time the will was made, the words "his heirs" mean his children, proves, if it proves anything, too much, and thus works its own overthrow. If this argument be sound, then all devises using those words create only a life-estate if there are children of the devisee living, and that this is not true all the cases upon the subject declare in most emphatic terms. If the words used are such as create an estate in fee, that estate the devisee takes, no matter whether he has or has not living children. The argument finds no support from any decision, nor can it be supported on principle; it is, indeed, flatly opposed on all sides, for the term "heirs" is the term, which, of all others, most strongly expresses an intention not to limit the estate to the children, but to bestow it in the most ample manner upon the devisee who first takes the estate.

In the case of *Vannorsdall* v. *Van Deventer*, 51 Barb. 137, the will gave to the wife of the testator all of his real estate during her lifetime, and then proceeded as follows: "*Fourth.* I give and bequeath to the legal heirs of my brother, Abram Vannorsdall, deceased. *Fifth.* And the legal heirs of my sister, Maria Snyder, deceased. *Sixth.* I give and bequeath to the heirs of my brother-in-law, William Van Deventer, all my real estate at the death of my wife, Elizabeth, to be divided equally between each of the heirs above named after the decease of my wife, Elizabeth Vannorsdall." The court held that the word "heirs" should be held to mean children of the persons named. There are several points of difference between the will in that case and the one in this, but it is only

necessary to name one to show that the two cases are governed by entirely different principles. In the case cited the words of inheritance, "legal heirs," did not follow the name of the first taker; here they do. What has been said respecting the difference between the case cited and the present is equally true of the case of *Heard* v. *Horton*, 1 Denio, 165. It emphasizes this difference to note that in the case just named the contention was that the first taker took a fee, not by force of words creating such an estate, but by implication arising out of the fact that he paid a legacy charged upon the land devised. The point decided in *Simms* v. *Garrot*, 1 Dev. & Batt. Eq. 393, was this: "A legacy to the lawful heirs of A., when it appears in the will that he is living, is equivalent, as a description, to a legacy to his next of kin, or to his children." Here the devise is to "Samuel B. Mann and his heirs," and this statement of itself fully exhibits the difference between the two cases. . The devise in *Burchett* v. *Durdant*, 2 Vent. 311, was: "I give to my cousin John Higden and his heirs, during the life only of Robert Durdant my kinsman, all those my messuages, etc., in Chobham in the county of Surrey; upon this trust and confidence, that he the said John Higden and his heirs, shall permit and suffer the said Robert Durdant, during his life, to have and receive the rents and profits thereof, which shall yearly grow due and payable. * * And from and after the decease of Robert Durdant, then do I give said lands and premises in Chobham unto the heirs males of the body of him the said Robert Durdant now living, and to such other heirs male and female as he shall hereafter happen to have of his body; and for want of such heirs, then to the use and behoof of my cousin Gideon Durdant and the heirs of his body."

The holding of the court, as the reporter gives it, was: "That this was a remainder vested in George Durdant; for the remainder being limited to the heirs of the body of Robert Durdant, now living, and George being found to be then the

only son, it was a sufficient designation of the person, and as much as if it had been said, to his heir apparent," and that "George Durdant took an estate tail." In the case under immediate mention the words of inheritance were not coupled with the name of the devisee, but the devise was definitely and expressly to him during his life. The words "to his heirs" are found in a distinct clause, reading: "And from and after the decease of Robert Durdant, then do I give the said lands and premises in Chobham unto the heirs males of the body of him the said Robert Durdant now living." There was no first taker of the fee named coupled with words of limitation, but words describing persons who should take after the life expired are used. It is plain that this clause described a person, or a class, who were to take, and that as the devise to the ancestor was during life, and as there were no words of limitation coupled with his name, the persons described, as devisees of the fee, took by virtue of the devise, and not by inheritance. In the case at bar the words of limitation are appropriately coupled with the name of the devisee, and there are no words descriptive of a class, or of a person, except the named devisee; all the words employed are words of limitation directly annexed to the name of the first taker, and their effect is to measure the extent of the estate devised to the first named devisee. In *Darbison* v. *Beaumont*, 1 P. Wms. 229, the testator, after devising the estate to trustees for a term of years, settled it on " the first son of his body lawfully begotten, and the heirs male of such first son, lawfully issuing," and this was held to be a description of the person entitled to take. In the case cited there was no devise with words of limitation to a designated person. There was nothing more than a description of the person entitled to take the inheritance, and this distinguishes the case from the class to which the present belongs. It would have been very different if, in the case cited, a first taker had been designated, and his name followed by words of limitation, but there was nothing of the kind in the will.

Where the appropriate words of limitation follow, and are appropriately connected with the name of the first taker, an estate in fee is created unless the superadded words clearly cut down the estate.   This is an old and firmly established rule, and we have not travelled an untrodden path in reaching the conclusion that the words of limitation, coupled with the name of the devisee, do not describe a class who are to take by devise, but operate to vest in the first taker an estate in fee simple.   In the case of *Jack* v. *Fetherston*, 9 Bligh, 237, the subject received a thorough discussion.   TINDAL, C. J., in the course of his opinion, said:  " The words which first occur in the devise, ' I give to my kinsman William Fetherston and his heirs male my real estates,' do, in a will, give to the devisee a clear and unequivocal estate tail. The only question therefore is, whether the words which follow do with equal clearness and certainty cut down the estate tail so given to the devisee into an estate for life, and make his sons to take estates tail as purchasers, instead of by limitation."   In *Poole* v. *Poole*, 3 B. & P. 620, Lord ALVANLEY said :  " The first taker " shall be held to have an estate tail " where the devise to him is followed by a limitation to the heirs of his body, except where the intent of the testator has appeared so plainly to the contrary that no one could misunderstand it."  The case of *Toller* v. *Attwood*, 15 Q. B. 929, is not unlike the present ; there the devise was to E. for her separate use for life, with remainder to trustees to preserve contingent remainders, with remainder to the heirs male of the body of E. to be begotten, who shall live to attain the age of twenty-one years, and to his heirs and assigns forever, and it was held that the words, " who shall live to attain the age of twenty-one years," could not restrict the force of the words of limitation contained in the devise, and that E. took an estate tail. There are very many other cases declaring this doctrine. *Mills* v. *Seward*, 1 J. & H. 733; *Grimson* v. *Downing*, 4 Drew. 125; *Anderson* v. *Anderson*, 30 Beav. 209; *Moore* v. *Brooks*, 12 Gratt. 135 ; *Tipton* v. *LaRose*, 27 Ind. 484; *Small*

v. *Howland,* 14 Ind. 592.   In attaching great weight to the words of limitation, "his heirs," used as they are in close conjunction with the name of the first taker in the devise before us, we do no more than obey a rule which has, as Chancellor Kent says, for more than five hundred years formed part of the law, and upon which this court has again and again built its judgments.   In thus regarding the words, we bring this case within the great class of cases found in the books, and distinguish it from the class of cases represented by *Burchett* v. *Durdant, supra,* and *Darbison* v. *Beaumont, supra.* The class represented by these cases is, in numbers, very limited, and in character somewhat anomalous, but there is nothing in the decisions in the cases belonging to that class which antagonizes the great rule of property which controls cases like the one at bar.   In all of the cases represented by *Burchett* v. *Durdant, supra,* and *Darbison* v. *Beaumont, supra,* the words of the devise were to the heirs of a person named, not to a named person and his heirs, as "to the heirs of Robert Durdant," and this phrase is rightly construed to mean kinsmen, for, otherwise, there would be no one capable of taking, because no man can have heirs during life; but where the devise is to A. and his heirs, there is a person capable of taking the whole estate, and with his name are connected words of limitation describing such an estate.   If, in the case of *Burchett* v. *Durdant, supra,* the devise had read to Robert Durdant and his heirs, then the case would have been in principle like the one in hand; but there was no such provision. There was a provision essentially different, describing a class who were to take, and excluding, in unmistakably plain terms, the first taker from anything more than a life-estate.

Judgment of the general term of the superior court reversed, with costs.

Filed Dec. 12, 1884.   Petition for a rehearing overruled Feb. 20, 1885.