The Fountain County Coal and Mining Company *v.* Beckleheimer *et al.*

No. 11,070.

THE FOUNTAIN COUNTY COAL AND MINING COMPANY *v.* BECKLEHEIMER ET AL.

DEED.—*Rule in Shelley's Case.*—*Conveyance to Class.*—*Construction of words: "Present Heirs."*—A deed with an introductory clause reading thus: "This indenture witnesseth, that Isaiah Ferguson, in consideration of natural love and affection which he bears to his daughter Nancy West and her present heirs, and the sum of five dollars, the receipt whereof is hereby acknowledged, does give, grant and convey to the said Nancy West and her present heirs forever," and a *habendum* reading as follows: "To have and to hold the same to the said Nancy West and her present heirs forever," does not, at common law, vest a fee in the grantee expressly named therein.

SAME.—*Fee in Lands.*—*How Created at Common Law.*—At common law an estate in fee could only be created by the use of the term "heirs" in its technical sense, and when there were superadded words clearly showing that the word was not used in its technical sense, an estate in fee was not vested in the grantee, nor could a fee tail be created without the employment of the word "heirs" in its technical signification.

SAME.—*Conveyance to Several.*—*What Estates Grantees Take.*—Where an estate is granted to several persons, and their respective interests are not specifically designated, they take jointly.

Fròm the Fountain Circuit Court.

*L. Nebeker* and *H. H. Dochterman,* for appellant.

*T. F. Davidson* and *C. E. Booe,* for appellees.

ELLIOTT, J.—This controversy turns upon the effect of a deed executed by Isaiah Ferguson to his daughter, Nancy West, who was at the time it was executed, a widow with six children. The introductory part of the instrument reads thus: "This indenture witnesseth that Isaiah Ferguson, in consideration of natural love and affection which he bears to his daughter Nancy West and her present heirs, and the sum of five dollars, the receipt whereof is hereby acknowledged, does give, grant and convey to the said Nancy West and her present heirs forever, the following real estate:" Here follows a description of the land, and the deed then proceeds thus: "To have and to hold the same to the said

Nancy West and her present heirs forever. The grantor, his heirs and assigns covenanting with the grantee, her present heirs and assigns, that the title so conveyed is free, clear and unincumbered."

The contention of the appellant is that the deed vested in Nancy West an estate in fee simple, and this involves the ruling question in the case.

Our decisions establish the doctrine that the rule in Shelley's Case is the law of the State, and by them we are bound. *Ridgeway* v. *Lanphear*, 99 Ind. 251; *Shimer* v. *Mann*, 99 Ind. 190; *Maxwell* v. *Featherston*, 83 Ind. 339; *Gonzales* v. *Barton*, 45 Ind. 295; *Andrews* v. *Spurlin*, 35 Ind. 262; *McCray* v. *Lipp*, 35 Ind. 116; *Nelson* v. *Davis*, 35 Ind. 474; *Siceloff* v. *Redman*, 26 Ind. 251; *Doe* v. *Jackman*, 5 Ind. 283; *Sorden* v. *Gatewood*, 1 Ind. 107. If, therefore, the case is within that rule the appellant must prevail. The question is thus narrowed to this: Is the case within the rule?

It is an axiomatic principle that no person in life can have heirs; heirs apparent or presumptive there may be, but not legal heirs. The deed could not, therefore, have operated to convey land to the "present heirs" of Nancy West. As the deed could not have operated to convey to the heirs of Nancy West, the clause must be construed to convey to persons in being jointly with her, or else it must be disregarded. We can not disregard the clause, emphasized as it is by clear and deliberate repetition, and we must ascribe to it the force which the law assigns it. Words deliberately put into a deed, and put there for a purpose, are not to be lightly considered, nor arbitrarily put aside. The words in the deed before us were deliberately written in the instrument, are there for a purpose, and are not without meaning. We can assign them a meaning without encroaching upon any rule of law, and, by doing this, can give just effect to the intention of the grantor. Our reason for asserting that we can give them a meaning and thus effectuate the intention of the grantor is this: The real consideration of the deed is the love and

affection which the grantor bore to Nancy West and her "present heirs," and it was these persons jointly, and not Nancy West alone, that he intended to make the recipients of his bounty. Our reason for asserting that we can assign a meaning to the words that will carry the estate where the grantor meant it to go, without violating any rule of law, is this: That such words are descriptive of a class who shall take the estate, and are not words carrying an estate to the first named person in severalty and to her successors in perpetuity, and, consequently, they operate to convey a joint estate to persons in being. The class, of which the words used in this deed are descriptive, is composed of Nancy West and her "present heirs" jointly, and as she can have no heirs while living, they mean heirs presumptive. Broom Legal Max. 521.

The case, although a rare one, is not novel, nor are the principles which govern it new to the law. Words of limitation are words used as descriptive of persons who are to take as the successors of the first person named, and the word "heirs" is usually such a word. The word is, however, not always assigned that force. Preston says it can not have that force if the "intention steers clear of the reason of the rule, or of its literal terms." Preston Estates, 275. The intention in this instance does "steer clear," for, as it is perfectly obvious that Nancy West could not have "present heirs," the reason of the rule is avoided, and the words "present heirs" can only be regarded as descriptive of a class who are to jointly take the estate with the grantee expressly named. Recurring to Preston, we find it written by him, that, "After the intention is fixed, the law decides on the gift; allowing the intention to govern, as often as it is clear that the word heirs is not used, as descriptive of the class of legal successors; but in designation of an individual, or of particular persons." Preston Estates, 275.

In Fearne on Remainders it is said, in speaking of the rule in *Shelley's Case*, that "The rule will not be applied if there

are any words mediately or indirectly, yet unequivocally, denoting, that the persons who are to succeed are individuals other than persons who are to take simply as heirs general or special of the ancestor." 2 Fearne Remainders, p. 239. At another place this author says: "But, if there are any words referring, not merely to the mode of succession, but to the objects of succession, and clearly and unequivocally explaining or indicating them to be individuals other than persons who are to take simply as heirs general or special of the ancestor; the rule will not apply." 2 Fearne, *supra*, 238.

Chancellor Kent says: " Where the testator annexes words of explanation to the word heirs, as to the heirs of A. now living, showing thereby that he meant by the word heirs a mere *descriptio personarum,* or specific designation of certain individuals," the case is not within the rule in Shelley's Case, 4 Kent Com. 221.

In *Darbison* v. *Beaumont*, 1 P. Williams, 229, the provision reads thus: To " the first son of his (the testator's) body lawfully begotten, and the heirs male of such first son lawfully issuing," and it was held that this was a description of the person who was to take.

The devise in *Burchett* v. *Durdant*, 2 Ventr. 311, was : "I give to my cousin John Higden and his heirs, during the life only of Robert Durdant my kinsman, all those my messuages, etc., in Chobham in the county of Surrey ; upon this trust and confidence, that he the said John Higden and his heirs, shall permit and suffer the said Robert Durdant, during his life, to have and receive the rents and profits thereof, which shall yearly grow due and payable. * * And from and after the decease of Robert Durdant, then do I give the said lands and premises in Chobham unto the heirs males of the body of him the said Robert Durdant now living, and to such other heirs male and female as he shall hereafter happen to have of his body; and for want of such heirs, then to the use and behoof of my cousin Gideon Durdant and the heirs of his body."

The holding of the court, as the reporter gives it, was: "That this was a remainder vested in George Durdant: for the remainder being limited to the heirs of the body of Robert Durdant, now living, and George being found to be then the only son, it was a sufficient designation of the person, and as much as if it had been said, to his heir apparent," and that "George Durdant took an estate tail."

The reasoning of the court was, that as the person named could not have heirs in his lifetime, the testator must be taken to have employed the words found in the devise as descriptive of the person who should take a present estate, and not as designating the successors of the first taker.

In *Vanrorsdall* v. *Van Deventer*, 51 Barb. 137, the language of the will was: "*Fourth.* I give and bequeath to the legal heirs of my brother, Abram Vannorsdall, deceased, *Fifth.* And the legal heirs of my sister, Maria Snyder, deceased, *Sixth.* I give and bequeath to the heirs of my brother-in-law, William Van Deventer, all my real estate at the death of my wife, Elizabeth, to be divided equally between each of the heirs above named after the decease of my wife, Elizabeth Vannorsdall," and the court held that the word "heirs" should be held to mean children of the persons named.

In *Simms* v. *Garrot*, 1 Dev. & B. Eq. 393, it was decided that "A legacy to the lawful heirs of A., when it appears in the will that he is living, is equivalent, as a description, to a legacy to his next of kin, or to his children."

In *Goodright* v. *White*, 2 W. Blackst. 1010, the devise was to Margaret White and her heirs, now living, and it was held that the case was not within the rule. There are other cases declaring a like doctrine, but we deem it unnecessary to comment upon them. *Heard* v. *Horton*, 1 Denio, 165; *James* v. *Richardson*, 1 Ventr. 334; *Roberts* v. *Ogbourne*, 37 Ala. 174; *Powell* v. *Glenn*, 21 Ala. 458.

In *Shimer* v. *Mann*, *supra*, we examined this general subject and marked the distinction between cases where the words "heir" and "heirs" were employed as words of limita-

tion, and those where, by the force of superadded words, these words were deemed to be descriptive of a class who should take, and held that in the one case they denoted successorship under the laws of descent, and in the other denoted individuals who should take the estate granted, and that as used in the instrument then before us they denoted successorship. We now encounter a case where they do not denote successorship, but describe a class who shall take the estate.

It has been very often held—there is, indeed, no conflict upon the question—that the technical words may be explained by superadded words, and that where it clearly and unequivocally appears that the word "heirs" was not used in its technical sense, it will be assigned the meaning given it by the person by whom it was used. *Shimer* v. *Mann, supra, vide* auth. p. 193; *Ridgeway* v. *Lanphear, supra; Rapp* v. *Matthias,* 35 Ind. 332; *Cleveland* v. *Spilman,* 25 Ind. 95.

We know that wills are construed with more liberality than deeds, and that courts are less inclined to depart from the technical meaning of the word "heirs" in the one case than in the other. *Shimer* v. *Mann, supra; Ridgeway* v. *Lanphear, supra; Cleveland* v. *Spilman, supra.* But, in the case before us, the meaning of the instrument is too plain to admit of doubt. It is certain that the often repeated words "present heirs" have some meaning, and it is equally clear that they can only mean heirs apparent, who in this instance were the children of the person named.

In *Darbison* v. *Beaumont, supra,* it was said: "That the word 'heir' had in law several significations: in the strictest, it signified one who had succeeded to a dead ancestor; but in a more general sense, it signified an heir apparent, which supposed the ancestor to be living," and it was there held, as we hold here, that the word was used in the latter sense. The court in *Blake* v. *Stone,* 27 Vt. 475, ap-

plied this principle to a deed wherein the *habendum* was as follows: "To have and to hold the same to the said Leonard Burt for and during the term of his, the said Leonard Burt's natural life, and no longer, and in remainder to the heirs of his, the said Leonard Burt's, body (Charles Burt, son of the said Leonard, excepted,) forever." In *Prior* v. *Quackenbush,* 29 Ind. 475, the question arose upon a deed, and it was held that the superadded words controlled the technical terms and created a life-estate. It is not possible that a deed containing the usual word "heirs" should in all cases be held to carry a fee, for there may be other words which will give force and effect to the deed and which will control the word "heirs," for no one would seriously insist that, if the word "apparent" was prefixed, the technical meaning would not be changed. The rule is that it is only where the word is used in its technical sense that it necessarily operates to convey a fee. An eminent lawyer says: "The words 'heirs,' or 'heirs of the body,' must be used in their technical sense, as importing a class of persons to take indefinitely in succession. Hence, if it appears that the words were not employed in this sense, but inaccurately, as designating particular individuals only, as if the limitation were to the heirs now living, the rule in Shelley's case would not be applicable; but the persons who, at the time of the limitation, were the ancestor's heirs apparent, or presumptive, would take a vested remainder." 2 Minor Inst. 343. This principle applies here. It is evident that the grantor did not use the word "heirs" in its technical sense, for it is inconceivable that he should bear natural love and affection to those who should succeed in an indefinite line the daughter whom he named. The words "present heirs" are quite as expressive and clear as the words "heirs now living," and it is obvious that the grantor meant to grant the estate to living persons for whom he cherished " natural love and affection."

There are cases where words annexed to the word " heirs " may be rejected as repugnant, but this is not such a case.

Here the words employed by the grantor describe the persons who shall take, and do not undertake to limit or define the mode of succession. Words superadded to the word "heirs" may be rejected when they undertake to limit the mode of succession and to override the rules of law, but not when they are employed for the purpose of designating the persons who shall take the estate. If we should assume that the word "heirs" is used in its technical sense, then there would be ground for holding that there was a repugnancy, but this we can not assume, for the superadded words show that it was not thus used, but was used in the sense of heirs apparent or presumptive. Counsel quote from Preston what we regard as the true rule upon the question under immediate discussion. That author says: "It is also a rule, that the limitation must not prescribe an order of succession from the purchaser, differing from the order of succession which the law has established." Preston Estates, 461. But this rule does not govern here, for there is here no attempt to establish an order of succession; there is a description of the grantees who shall take the estate granted, namely, "Nancy West and her present heirs," and not a designation of those who shall succeed. The language employed by the grantor does not prescribe a mode of succession, but describes the persons who shall take the estate granted. Nancy West and her heirs apparent are indicated as the grantees; they are not described as the successors of a first taker. There is no attempt to fix or control the manner of succession; the grantor simply indicates that he entertains natural love and affection for his daughter and her present heirs, and to manifest that affection, grants to them the land conveyed.

It was the inexorable rule of the common law that unless the word "heirs" was employed in a deed, and employed in its technical sense, an estate in fee was not created, and as the word is not so employed in the deed before us, it did not, under the common law rule, convey the fee. It is argued by appellant's counsel that the grantor intended to convey the fee,

and, therefore, that the instrument should be construed to create an estate in fee in Nancy West. But the answer to this argument is that the deed was executed in 1851, and is governed by the common law rule, for the statute changing the rule was not enacted until May 6th, 1852. *Nicholson* v. *Caress*, 45 Ind. 479; *Nicholson* v. *Caress*, 59 Ind. 39.

It is also argued that the word "present" should not be allowed to control the word "heirs," but this argument can not prevail, for the word is used deliberately, is several times repeated, and does essentially modify and qualify the meaning of the word which it precedes. The signification which the qualifying word annexes to the word "heirs" is not an unknown or strange one, but is one recognized by general use and by the law. Broom Leg. Max. 521. The modification is so essential as to strip the word "heirs" of its technical meaning and give it the general meaning of heirs apparent. It is impossible to escape this conclusion without holding that in no case can the meaning of the term "heirs" be modified, and this, as the authorities cited very satisfactorily prove, would be unreasonable and unjust. It needs no argument to prove that it is just to permit a grantor to select and designate the objects of his bounty, and that it is reasonable to permit him to affix his own definition to the words which he employs. If Isaiah Ferguson had used the words "the apparent heirs," or the words "the presumptive heirs," of Nancy West, we suppose nobody would dream of doubting that the word "heirs" was not used in its technical sense, and the word "present" so clearly shows that he meant heirs presumptive that we perceive no ground upon which it can be even plausibly maintained that the word "heirs" was used in its technical sense.

Another view of the case is presented by counsel, for they maintain that the words employed in the deed create an estate tail. We think this position is fully answered by Blackstone's statement of the rule: "As the word heirs," he says, "is necessary to create a fee, so in farther limitation of the

strictness of the feudal donation, the word body, or some other words of procreation, are necessary to make it a fee tail, and ascertain to what heirs in particular the fee is limited. If, therefore, either the words of inheritance, or words of procreation be omitted, albeit the others are inserted in the grant, this will not make an estate tail. As, if the grant be to a man and his issue of his body, to a man and his seed, to a man and his children, or offspring: all these are only estates for life, there wanting the words of inheritance, his heirs. So, on the other hand, a gift to a man, and his heirs male or female, is an estate in fee simple, and not in fee tail: for there are no words to ascertain the body out of which they shall issue. Indeed, in last wills and testaments, wherein greater indulgence is allowed, an estate tail may be created by a devise to a man and his seed, or to a man and his heirs male; or by other irregular modes of expression." 2 Blackst. Com. 114. In the deed before us the limitation is not to the heirs of the body of Nancy West, but the grant is to her and her heirs apparent, whether they are or are not the issue of her body. There are, therefore, no words of procreation.

The question presented on the motion to modify the judgment is this: Did Nancy West take a life-estate in one-half of the lands, or did she take in common with her presumptive heirs, her children? We think that Nancy West and her heirs apparent took the estate in common, and that the judgment of the court below so adjudging was right. The rule is that where a thing is granted to several persons, and their respective interests are not specifically designated, they take jointly. *Wilburn* v. *Wilburn*, 83 Ind. 55; *Crockett* v. *Crockett*, 22 Eng. Ch. Rep. 553; *Allen* v. *Hoyt*, 5 Met. 324.

Judgment affirmed.

Filed May 25, 1885.