Nelson and Others *v.* Davis.

———◆———

## NELSON and Others *v.* DAVIS.

CONVEYANCE.—*Construction.*—On the 8th of November, 1842, A., for a pecuniary consideration, made to B. and C., as trustees of D., daughter of A., a conveyance of real estate, the *habendum* whereof was as follows: " unto them, the said B. and C., as trustees for the said D., and for her sole and proper benefit and behoof, and for no other purpose whatever, during the natural life of the said D., and at her death to descend to the children of the said D., if any she have, and if not, to her assigns forever."

*Held,* that the instrument was a deed of bargain and sale.

*Held,* also, that by the statute of uses, 27 Henry VIII., the legal title was vested in the trustees, and not in the *cestui que use.* What would be the effect of such an instrument if executed under the statue of 1843 or 1852 is not decided.

*Held,* also, that the conveyance vested in D. an equitable title for her life only, which she could effectually convey.

SAME.—*Conveyance to Trustee.*—A conveyance to a trustee is commensurate with the estate conveyed to the *cestui que trust,* and is limited and qualified by the words of limitation applied to the estate of the *cestui que trust.*

SAME.—" *Heirs.*"—Conveyances by deed, at common law, or to uses under the statute of uses, or creating powers of appointment, in order to transmit the fee, must contain the word *heir* or *heirs.*

TENANTS IN COMMON.—*Adverse Possession.*—When one tenant in common is in possesion of the whole estate, claiming under a deed purporting to convey the entire estate, he will be deemed to have ousted his co-tenants.

APPEAL from the Posey Circuit Court.

WORDEN, J.—Complaint by the appellants against the appellee to recover certain real estate. Demurrer sustained to the complaint, and final judgment for the defendant. Exception.

The complaint alleges, in substance, the following facts: That on the 8th of November, 1842, William Rogers, and Jane, his wife, were seized in fee of the land in controversy; that on the same day, in consideration of eight hundred dollars, they conveyed the same to Preston C. Rogers, and John Cox, as trustees of Elizabeth Rogers, daughter of said William and Jane.

*Habendum:* "Unto them, the said Preston C. Rogers and John Cox, as trustees for the said Elizabeth, and for her sole and proper benefit and behoof, and for no other purpose whatever, during the natural life of the said Elizabeth, and at her death to descend to the children of the said Elizabeth, if any she have, and if not, to her assigns forever."

That in 1845, the said William and Jane, the grantors, departed this life, and that the plaintiffs are their only heirs now living; that on the 20th of November, 1864, the said Elizabeth and her husband, she having intermarried with one Harrison Newsome, conveyed the property in fee, with general covenants of warranty, to the defendant, for the consideration of sixteen hundred dollars; that the defendant thereupon took possession of the property and still retains the same; that in February, 1869, the said Elizabeth died, never having had any children; that in March, 1869, the plaintiffs demanded of the defendant possession of the premises; and that the defendant refused and still refuses to deliver up the same to the plaintiffs; wherefore the plaintiffs say that they are the owners of the property in fee, and that the defendant holds the same without right, &c.

The main question in the case is, whether anything more than a life estate, either legal or equitable, for the life of said Elizabeth, passed by the conveyance from William and Jane to the grantees therein named. The word "heirs," generally essential in common law conveyances in order to the transmission of the fee, is lacking in the deed in question.

It is claimed by the counsel for the appellants, and conceded by counsel for the appellee, that inasmuch as the con-

veyance was for the sole use and benefit of Elizabeth, without any power of sale or otherwise coupled with the trust, the statute of uses, 27 Henry VIII., executed the use and vested the legal title at once in Elizabeth. We do not concur in this view, although we are inclined to the opinion that the legal rights of the parties must be the same as if the case were to be put upon that ground. The deed in question is a deed of bargain and sale.

This species of conveyance, says Blackstone, was introduced by the statute of uses.. Before the passage of the statute, the title to real estate could not be transmitted simply by a deed of bargain and sale. Livery of seizin could not thus be dispensed with. It was the practice before the statute for a person seized of lands to bargain and sell them to another, in which case, if the consideration was sufficient to raise a use, the bargainor became immediately seized to the use of the bargainee. And since the passage of the statute, the use vested in the bargainee by a deed of bargain and sale is at once executed by the statute, and the legal title vested in the bargainee. But the statute executes but one use; and, therefore, if a use be limited upon a use, the statute executes the one, but not both uses. 2. Bl. Com. 336, 338; 2 Greenl. Cr. 138; 2 Washb. Real Prop. 392.

In our opinion, the title to the property in question was, by virtue of the statute of uses, vested in the trustees, but not in the *cestui que use*, Elizabeth Rogers. We speak, of course, of the law as it stood at the date of the execution of the deed in question, and do not undertake to determine what might have been its legal effect had it been executed under the statute of 1843 or 1852. See Rev. Stat. 1843, p. 447; 1 G. & H. 652.

Now, although Elizabeth had not any legal title to the premises, as we think, by virtue of the deed in question, yet she had an equitable title which she could convey as effectually as if she had been vested with the legal estate; and hence it becomes necessary to inquire as to the quantity,

extent, or duration of the equitable estate thus vested in her.

A conveyance to a use requires the same words to transmit the fee that are required in other conveyances. "When uses," says Chancellor KENT, "were by statute transferred into possession, and became legal estates, they were subjected to the scrupulous and technical rules of the courts of law. The example at law was followed by the courts of equity, and the same legal construction applied by them to a conveyance to uses. If a person purchase to himself forever, or to him and his assigns forever, he takes but an estate for life. Though the intent of the parties be ever so clearly expressed in the deed, the fee cannot pass without the word 'heirs.'" 4 Kent Com. 5.

The quantity of the estate, although an equitable estate only, which vested in Elizabeth by the conveyance, was the same as if it had been conveyed to her directly in the same language, without the interposition of trustees. It may be observed that the word "heirs" is not used in connection with the estate vested in the trustees, or in the use vested in Elizabeth. But had it been used in connection with the estate of the trustees, it would not seem on principle or authority, to enlarge the interest limited by the terms of the deed to Elizabeth. The estate of trustees may, perhaps, be restricted or extended, as the exigency of the trust may require. Hill Trustees, 239, 249. We make the following extract on this subject from another author: "In the case of conveyances in trust, the trustee will take the legal estate in fee, although limited to him without the word heirs, if the trust which he is to execute be to the *cestui que trust* and his heirs. The words of limitation and inheritance in such cases are connected with the estate of the *cestui que trust*, but are held to relate to the legal estate in the trustee, because without such construction the trustee would not be able to execute the trust. His estate would be commensurate with the trust, and that only, even though it were to him and his heirs, and the trust was for life only in the *cestui*

*que trust.* Thus a grant to A. B., in trust to sell, carries the fee. So, if to A. and his heirs, in trust for B., until he attains twenty-one years; the trustee takes a chattel interest only, and though the trust is to 'heirs,' if the trustee dies, his executor is to execute the trust, and not his heirs." 1 Washb. Real Prop. 72.

We think it to be quite clear, on the authorities, that the legal estate of the trustees was simply co-extensive with the use vested in Elizabeth, and that that use was limited to the life of Elizabeth; for the reason that the deed does not contain the word "heirs," which is essential to carry the fee. Here again we speak of the law as it stood at the date of the deed in question, since which time it has probably changed in this respect by statute. 1 G. & H. 260, sec 14.

The counsel for the appellee insists, however, that the case comes within the rule in Shelley's case, and that Elizabeth took the fee. Chancellor KENT quotes from PRESTON the following definition of the rule in Shelley's case, as being full and accurate: " When a person takes an estate of freehold, legally or equitably, under a deed, will, or other writing, and in the same instrument there is a limitation by way of remainder, either with or without the interposition of another estate, of an interest of the same legal or equitable quality, to his heirs, or heirs of his body, as a class of persons to take in succession, from generation to generation, the limitation to the heirs entitles the ancestor to the whole estate." 4 Kent Com. 215. It will be observed that to bring a case within the rule, the limitation must be to the heirs, or the heirs of the body, of the person taking the freehold.

" The word children, in its primary or natural sense, is always a word of purchase, and not a word of limitation; and the word issue is very frequently a word of purchase also. But heirs and heirs of the body are, in their primary and natural sense, words of limitation, and not of purchase." Chancellor WALWORTH, in case of *Schoonmaker* v. *Sheely,* 3 Denio, 485.

In *Sorden* v. *Gatewood,* 1 Ind. 107, the grant was to Sarah

Gatewood, "to have and to hold said tract of land to the said Sarah during her natural life, and to her children and their assigns forever." It was held that these were words of purchase, and not of limitation, and that Sarah took but a life estate. So, also, in the case of *Doe* v. *Jackman*, 5 Ind. 283, a bequest was made to a son and daughter during the term of their natural lives, and after their decease, to their children, the heirs of their bodies, forever. It was held, that even this language, and in a will, did not bring the case within the rule, and that the son and daughter only took a life estate. See, also, the case of *Siceloff* v. *Redman's Adm'r*, 26 Ind. 251.

Washburn says: "If the term made use of in the limitation is 'son' or 'child,' and it is used in the sense of heirs, and not as a *designatio personæ*, but comprehending a class to take by inheritance, it is to be taken as a term of limitation, and accordingly brings the case within the rule in Shelley's case. So it is with the word 'issue.' The context in these cases may be resorted to, to get at the sense in which the term or terms are used. And if, as thus construed, heirs in the technical sense are intended, the case would come within the rule." 2 Washb. Real Prop. 274.

This doctrine, as applied to wills, is in harmony with the general principles of law; as in wills, the word heirs is not necessary to the transmission of the fee, but other words denoting an intention to pass the fee will be efficient for that purpose. 4 Kent Com. (10th ed.) 656.

But as applied to deeds, it is hardly reconcilable with the common law doctrine that the word heirs, the place of which no synonym can supply, is necessary to the conveyance of the fee.

The case does not, in our opinion, come within the rule in Shelley's case.

It is also claimed by the appellee, that the language of the deed created a power of appointment in case the said Elizabeth had no children, and that the power was well executed

by her conveyance to the defendant; and that in this view, the title is in the defendant.

There seem to be insuperable difficulties in maintaining the defendant's title on this theory.

The power alluded to is one of those of "a latent and mysterious character," as described by Chancellor KENT, that derive their effect from the statute of uses. No formal set of words is requisite to create or reserve a power. It may be created by deed or will, and it is sufficient that the intention be clearly declared. 4 Kent Com. 319. Now, in our opinion, the intent to create a power is not clearly declared in the deed under consideration. The language is, "To have and to hold," &c., "for the said Elizabeth, and for her sole and proper benefit and behoof, and for no other purpose whatever, during the natural life of the said Elizabeth, and at her death to descend to the children of the said Elizabeth, if any she have, and if not, to her assigns forever."

For the sake of perspicuity we will leave out that portion that relates to the interest to be taken by the children of said Elizabeth, and bring into juxtaposition the portions that relate to the interest to be taken by herself. The sentence then will read something like this: "To have and to hold," &c., "during the natural life of the said Elizabeth, and in default of children, to her assigns forever." Now, thus read, it is quite clear that the words, "to her assigns forever," were used for the purpose of defining the quantity of the estate intended to be vested in her, and for no other purpose. If it was the intention of the grantors to vest in Elizabeth something more than a life estate, and if that intention has failed, through the ignorance of the conveyancer or otherwise, that is no reason why the language of the conveyance should be tortured into something that was evidently not intended, or perhaps conceived of, either by the grantors who executed, or the conveyancer who prepared the deed.

The case is but one among many, where an intent to convey something more than a life estate has been manifested,

but the purpose has failed for want of sufficient words to transmit anything more.

But conceding that the language employed might be sufficient to create a power, we will consider the case further on that theory. William and Jane Rogers must be regarded as the donors of the power; Elizabeth, the donee or appointor; and any person to whom she might "assign," the appointee. The deed from William and Jane is the instrument creating the power; and the deed from Elizabeth and her husband must be regarded as the instrument by which the power was executed.

We quote, as applicable to the case, the following passages from elementary writers: "It is important to bear in mind that an appointment, under a power, operates not as a conveyance of the land itself, but as a creation or substitution of a use to which the statute annexes the seizin. It is, therefore, always necessary, when creating a power, to raise or create a seizin in some one which shall be ready to serve the use when created by such appointment; and to that end, the seizin which is raised for the purpose must be commensurate with the estates authorized to be created under the power. If an estate were, therefore, conveyed to A., to such uses as B. should appoint, B. could appoint no greater estate in the use than the estate in A., and if the latter were for life only, B. could not appoint to C. in fee."

Again: "In case of a deed creating a power, the seizin or interest to serve the estate is actually raised by the deed itself, and the estates limited under the power accordingly derive their essence from that seizin. The appointor is merely an instrument; the appointee is in by the original deed." 2 Washb. Real Prop. 319.

"The seizin must be co-extensive with the estate authorized to be created under the power; and, therefore, if a life estate be conveyed to A., to such uses as B. should appoint, he cannot appoint any greater interest than that conveyed to A." 4 Kent Com. 323.

We have seen that but a life estate in the use was conveyed to Elizabeth by the deed in question, and that the seizin of the trustees was but co-extensive with the use, and was, consequently, but for her life; and it is clear, under the authorities, that no use could be raised by her appointment that would extend beyond the seizin. It comes back at last to the proposition, that conveyances by deed at common law, or to uses under the statute of uses, or creating powers of appointment, in order to transmit the fee, must contain the technical terms which the law has, for centuries, deemed indispensable for that purpose.

As Elizabeth had a life estate in the use, that, of course, passed by her deed to the defendant. Her father and mother held the reversion until their death; and upon the happening of that event, it descended to their heirs. This event happened, it is alleged, in 1845, and before Elizabeth and her husband conveyed to the defendant. At that time, she had inherited her share of the reversion, and we see no reason why that should not be regarded as having passed to the defendant under the deed to him. To be sure, at the time of Elizabeth's conveyance to the defendant, it was uncertain whether the reversioners would be entitled to possession on her death, as that would depend upon whether she left children; but her share of the reversion was vested in her at the time of her conveyance, and it mattered not, for the purpose of conveying it, when, or upon what contingency, the reversioners would be entitled to possession. It was a right that she could convey, and we think, as before stated, that it passed by the deed. As Elizabeth died without children, the reversioners became entitled to possession on her death. The result is, that the plaintiffs and defendant are tenants in common of the property, the defendant holding the share of the reversion that descended to Elizabeth.

In this aspect of the case, the appellee makes the point that the complaint is defective, in not showing that the defendant denied the plaintiffs' right, or did some act amount-

ing to such denial, as required by the statute.   2 G. & H. 285, sec. 614.   Under the whole circumstances, we think it sufficiently shown that the defendant is holding adversely to the plaintiffs, and not as a joint tenant with them, and that the statute of limitations is running against them.   It is shown that the deed from Elizabeth and her husband to the defendant was for the entire property, and in fee, and that he thereupon took possession of the property and still retains the same, and we think it will be intended that he took and retains such possession under the deed.

In the case of *Clark* v. *Vaughan*, 3 Conn. 191, it was held that the fact that one tenant in common is in possession of the estate claiming to hold by a deed covering the whole of it, is sufficient evidence of ouster to support ejectment by a co-tenant.   The demurrer to the complaint should have been overruled.

The judgment below is reversed, with costs, and the cause remanded.

*E. M. Spencer* and *W. Loudon*, for appellants.

*C. Denby*, *J. Pitcher*, and *H. C. Pitcher*, for appellee.