## CHAMBERLAIN ET AL. v. RUNKLE ET AL.

[No. 3,960.    Filed April 4, 1902.]

DEEDS.—*Construction.*—*Estates.*—*Conflict Between Premises and Habendum.*—A deed of real estate to a grantee named, during his natural lifetime, and to the heirs of his body begotten on his wife, named, in fee simple and forever, *habendum* to such grantee and wife, during their joint and several lives and in fee simple to the heirs of their bodies lawfully begotten and their assigns forever, vests in such grantee a fee simple estate.

From Huntington Circuit Court; *J. T. Cox*, Special Judge.

Suit by William Runkle and others against Edsell W. Chamberlain and others to quiet title. From a judgment in favor of plaintiffs, defendants appeal. *Reversed.*

*C. A. Metcalf*, for appellants.

*J. S. Branyan* and *M. Feightner*, for appellees.

BLACK, J.—In a suit to quiet title to real estate, the demurrer of the appellants to the amended complaint for want of sufficient facts was overruled. The case involves the construction of a deed of conveyance, under which all the parties claim, executed by the owner in fee simple of the real estate and his wife, as follows: "Know all men by these presents that we, Samuel Runkle and Mary Runkle, of the county of Perry and state of Ohio, in consideration of love and affection and also of $1, in hand paid by Jacob Runkle, of the same place, have bargained and sold, and do hereby grant, bargain, sell and convey unto the said Jacob Runkle, during his natural lifetime, and to the heirs of his body begotten on his wife, Nancy Runkle, in fee simple and forever, the following premises, lands and tenements situated in the county of Huntington and State of Indiana" (describing thirty acres of land). "To have and to hold said lands and tenements with the appurtenances unto the said Jacob Runkle and Nancy Runkle, his wife, during their joint and several lives and in fee simple to the heirs of their bodies lawfully begotten and their assigns forever. And the said Jacob [Samuel] Runkle and Mary Runkle, for themselves and heirs, doth hereby covenant with the said Jacob Runkle and Nancy Runkle and the heirs 'of their body and assigns, that they are lawfully seized of the lands and tenements aforesaid, that the premises are free and clear of all incumbrances whatsoever, and that they will forever warrant and defend the same with the appurtenances unto the said Jacob Runkle and Nancy Runkle, during their natural lives, and to the issue of their said marriage in fee simple forever, against the lawful claims of all persons whomsoever. In testimony whereof, the said Samuel Runkle and Mary Runkle, his wife, who hereby releases all her right of dower in said land and tenements, have hereunto set their hands and seals, this ——— day of October, 1850," etc. The signatures of the grantors were attested by two witnesses, and the execution of the deed was

duly acknowledged by the grantors, in Ohio, on the 9th day of October, 1850. The deed was recorded in Huntington county, Indiana, December 19, 1850, and Jacob and Nancy therein mentioned then went into possession of the land under the deed. Jacob and Nancy, husband and wife, were then the parents of two of the appellees, and afterward the three other appellees were born to them, these five being the only children born to them. September 30, 1856, Jacob and Nancy, still residing upon the land, by their deed of general warranty conveyed the land to John R. Coffroth, who took possession under his deed. Whatever interest the appellants have in the land is derived under Coffroth through intermediate conveyances and by descent. Nancy Runkle, mother of the appellees, died in 1897, about six months before the commencement of this suit, her husband, Jacob Runkle, having died some years earlier.

The appellants claim that under the deed above set out Jacob Runkle took title in fee simple, which he had good right to convey; while on behalf of the appellees it is claimed, and the court below held, that a life estate only was granted to Jacob and Nancy Runkle, during their joint lives and the life of the survivor, with remainder in fee simple to their children, the appellees, and that the title and right of possession of the appellants ceased with the death of Nancy Runkle.

It is a settled rule of law that the forms and solemnities requisite to the passing of title to real estate must be in conformity to the local law of the country in which the land is situated. 4 Kent Comm. (14th ed.) 441, note b. 519; 3 Washb. Real Prop. (5th ed.) 250; *Townsend* v. *Downer*, 27 Vt. 119.

In seeking a proper construction of the deed, it will be proper first to consider its premises, or portion preceding the *habendum*. It seems to be sufficiently plain, without argument, that the estate indicated by the premises was, under the rule in Shelley's case, an estate of inheritance, be-

ing an estate in fee tail in Jacob Runkle, his wife taking no estate, unless the words "in fee simple and forever" therein require a different conclusion.

The rule in Shelley's case is part of the law of this State. *Siceloff* v. *Redman*, 26 Ind. 251; *Fountain County, etc., Co.* v. *Beckleheimer*, 102 Ind. 76, 52 Am. Rep. 645; *Taney* v. *Fahnley*, 126 Ind. 88; *Perkins* v. *McConnell*, 136 Ind. 384; *Waters* v. *Lyon*, 141 Ind. 170.

Words of limitation, as "heirs" or "heirs of the body," coupled with the name of the first taker, do not describe a class who are to take by purchase, but operate to vest in the first taker an estate in fee simple or fee tail. See, *Shimer* v. *Mann*, 99 Ind. 190, 202, 203, 50 Am. Rep. 82.

At the time of the execution of the deed, the statute of this State provided, as it does now: "Estates tail are abolished; and any estate which, according to the common law, would be adjudged a fee tail, shall hereafter be adjudged a fee simple; and if no valid remainder shall be limited thereon, shall be a fee simple absolute." R. S. 1843, p. 424; §3378 Burns 1901.

A conveyance to A and the heirs of her body by B, who was her husband, would have formerly been an estate tail special, and under our statute is a fee simple absolute. *Tipton* v. *LaRose*, 27 Ind. 484.

Following language which under the rule in Shelley's case would have created an estate tail in the first taker, before estates tail were abolished, the draughtsman inserted the words "in fee simple and forever," and the question is presented whether or not these words have the effect of making the preceding words "heirs of his body begotten," etc., words of purchase instead of limitation, by making of the heirs of the body of the first taker a new root of inheritance in fee simple. Those who were to take, after the life estate in the first taker, were confined to the heirs of his body, a special class of heirs; and if these heirs were to hold as tenants in fee simple, the land would descend from them

to their general heirs, so that there would not be a succession from generation to generation to the same special class of heirs as that prescribed to take after the life estate. If a special class, the heirs of the body of the first taker, were to take as tenants in fee simple, this would be neither a fee tail nor a fee simple in the first taker, but the heirs of his body would constitute an original stock, that is, they would take by purchase and not by descent.

By statute of 1852 it was made unnecessary to use the words "heirs and assigns of the grantee" to create in the grantee an estate of inheritance. §3348 Burns 1901. Prior to the enactment of this statute, the common-law requirement of words of inheritance in a deed to show an intent to create an estate of inheritance obtained· in this State. Nelson v. Davis, 35 Ind. 474; Nicholson v. Caress, 59 Ind. 39.

Whatever may be said of the use of the words "in fee simple and forever" in a will, or in pleading, they are not apt words in a deed at common law. In a deed, an estate in fee simple could not be created at common law, nor could an estate in fee tail be created under the statute Westminster Second, without the word "heirs", used in its technical sense of a word of inheritance. See Fountain County, etc., Co. v. Beckleheimer, 102 Ind. 76.

The term "heirs" has a fixed legal meaning as a word of limitation; and a merely presumed intention, even in wills, will not control that significance of the word, and it will not be treated as a word of purchase unless the testator's intent so to use it is manifest. Doe v. Jackman, 5 Ind. 283; Siceloff v. Redman, 26 Ind. 251, 261. Heirs and heirs of the body are in their primary and natural sense words of limitation, and not of purchase. Schoonmaker v. Sheely, 3 Den. 485; Nelson v. Davis, 35 Ind. 474; Shimer v Mann, 99 Ind. 190.

Holt, C. J., in Countess of Bridgewater v. Duke of Bolton, 6 Mod. 106, said: "Most certainly in grants it [the

word estate] would not pass a fee, because the law appoints that, let the intent of the parties be ever so fully expressed and manifested in grants, without the word 'heirs' a fee shall not pass. If a feoffment be made to J. S. to have to 'him in fee simple', which words can have no other sense than to pass an inheritance, yet an estate only for life shall pass." At common law, to create a fee by deed, the use of the word "heirs" was essential. A conveyance of land to one forever, or to one and his assigns forever, would confer but a life estate; " 'for that there lack these words, "his heirs" which words only make an estate of inheritance in all feoffments and grants.' Litt. s. 1. * * * 'If one grant * * * to J. S. to have and to hold to him in fee simple, or in fee tail, without saying "to him and his heirs," or, "to him and his heirs, males," or the like, this is but an estate for life.' * * * Shep. Touch. 106." Elphin. Inter. of Deeds, 225.

At common law, no estate in fee simple could be created by deed without the word "heirs" and no estate in tail without the words "heirs of the body", but in England in deeds after 1881, an estate in fee simple may be created by a limitation to A "in fee simple"; and an estate tail may be created by a limitation to A, "in tail". Elphin. Inter. of Deeds, 225, 231.

Even in a will, "technical words, or words of known legal import, must have their legal effect, even though the testator uses inconsistent words, unless those inconsistent words are of such a nature as to make it perfectly clear that the testator did not mean to use the technical words in their proper sense." (*Doe* v. *Gallini*, 5 B. & A. 621), quoted in *Shimer* v. *Mann*, 99 Ind. 190, 193. But we need not say what would be the effect of using the words "in fee simple and forever", after words creating a fee tail, in a will.

At common law, no synonym could supply the place of the word "heirs" in a deed, and a conveyance to one forever, or to one and his assigns forever, would pass but a

life estate, and the words "forever" and "his assigns forever" were surplusage. *Nelson* v. *Davis*, 35 Ind. 474.

Words of limitation added to the first words of limitation to the heirs or heirs of the body of the first taker are sometimes held not to prevent the application of the rule in Shelley's case, where the superadded words are similar to the first words and may be understood as being used in the same sense. Where in a marriage settlement the limitations were to the husband for life, remainder to the wife for life, remainder to the heirs of the body of the wife *and their heirs and assigns forever*, it was held that the wife took an estate tail. *Alpass* v. *Watkins*, 8 D. & E. 516; 1 Preston Est. 347. See *George* v. *Morgan*, 16 Pa. St. 95; *Hileman* v. *Bouslaugh*, 13 Pa. St. 344, 53 Am. Dec. 474.

"Words of limitation which import a fee engrafted on words which would give an estate tail; as to J. R. for life, remainder to trustees for his life, remainder to the uses of the heirs males of the body of J. R. and their heirs, * * * will not prevent the application or attachment of the rule. In all these and like instances, the words of superadded limitation are understood and construed to be introduced for carrying the general intention more fully and more clearly into effect." 1 Preston Est. 351, 352.

In the case before us, it can hardly be supposed that the words "in fee simple and forever" added to words importing an estate tail, if used with understanding of the significance of all the legal terms employed, could have been intended to have a meaning the same as that of the words apt for the creation of an estate tail. But the superadded words were not apt as words for the creation of an estate in fee simple. It must clearly and unequivocally appear that the words "heirs of his body" were used merely as *descriptio personarum*, in order to prevent those words from being taken as words of limitation, or to make them words of purchase.

"Nor will it be any objection to the application of the rule, when the circumstances which call the rule into opera-

tion exist, that it appears to be probable, nay even certain, that the heirs, as a class of persons, were intended to take originally, in their own right, and that the first estate, viz., the estate in freehold, was meant to be a mere estate for life, without any further interest, present, or remote, in the ancestor. Even a declaration that the heirs, or heirs of the body, should take by purchase, would not, singly and alone, exclude the rule." 1 Preston Est. 326. See, also, *Waters* v. *Lyon*, 141 Ind. 170.

"If lands be given to the son and his heirs of the body of his father, the son. can not take as heir 'of the body of his father, because the grant is to him and his heirs, and consequently he hath a fee simple:' Co. Lit. 27*a*; the words 'of the body of his father' being rejected as repugnant." Elphin. Inter. of Deeds, 231.

The words "in fee simple" are used promiscuously in this deed, with what actual intent it may be not quite certain. The word "heirs" is employed in the technical sense of heirs special, as descriptive of a class of legal successors of the ancestor, and not as a designation of individuals or particular persons; and no words are used in connection with the word "heirs," in the premises, which can be regarded as having legal potency in a deed to qualify the word "heirs" as used, so as to make it designate heirs apparent or presumptive of a living ancestor, or particular individuals, and not those persons who were to succeed the first taker indefinitely as his special heirs technically so called.

Whatever the actual intention of the grantors, it is the manifest legal meaning of the premises of the deed that those who should take after the termination of the life estate of the first taker should take as heirs of his body begotten on his wife, named, not for the purpose of creating any estate in her, but by way of indicating the special heirs; and the terms in question employed in the premises do not create the root of a new inheritance, the stock of a new descent; but the legal meaning of the language employed in

the premises is that the heirs of the first taker should take, not as purchasers from the grantors, but as heirs of the body of the first taker, in whom by the rule in Shelley's case, which prevents the inheritance from being in abeyance, the expressed remainder to his heirs vests, which by our statute is made an estate in fee simple.

We are next to determine whether or not the estate thus created by the premises was defeated or modified by subsequent clauses of the deed. The apparent intention of the grantors is much pressed upon our attention by counsel. We are here considering a deed. Much more liberality for the purpose of ascertaining and enforcing intention is exercised in construing wills than in construing deeds. *Shimer v. Mann*, 99 Ind. 190, 50 Am. Rep. 82; *Ridgeway v. Lanphear*, 99 Ind. 251.

The application of the rule in Shelley's case constantly defeats the expressed intention of the grantor or devisor. The law supervenes his intention where the rule is applied. See *Waters v. Lyon*, 141 Ind. 170. As every part of a deed should be compared with every other part, so as to obtain the sense of the whole deed, the premises and the *habendum* should be construed together, and, if possible, they should be harmonized; but if they can not be harmonized, it is a rule in the construction of deeds that, of two repugnant clauses therein, the first shall prevail against the second; and in accordance with this rule, if any repugnance be found between the premises and the *habendum*, the meaning of the premises shall not be changed by the words of the *habendum;* that is, as to irreconcilable differences, the premises shall prevail over the *habendum*. 9 Am. & Eng. Ency. of Law (2nd ed.) 139.

It is undoubtedly true that a deed should be construed as a whole, and so that no part shall be rejected, if by construction the different parts can be so reconciled as to avoid contradiction. If the premises be expressed in general terms admitting of various meanings, an explanation by way

of indicating a particular meaning consistent with such general meaning may be furnished by the *habendum.* The office of the *habendum* is to limit and define the estate which the grantee is to have in the property granted. This is usually done in modern deeds in the premises, and where it has been so done the *habendum* is not essential. 9 Am. & Eng. Ency. of Law (2nd ed.) 139.

In *Budd* v. *Brooke,* 3 Gill (Md.) 198, 43 Am. Dec. 321, where a grant made by the premises in a deed of conveyance was construed to be in conflict with that contained in the *habendum,* it was said: "In our opinion, the limitation contained in the *habendum* must be rejected, and the estates given in the premises must prevail. In 2 Lomax's Dig., 188, it is stated, that 'where there are two clauses in a deed, of which the latter is contradictory to the former, there the former shall stand.' And at page 215, of the same book, it is said, that 'where the *habendum* is repugnant and contrary to the premises, it is void, and the grantee shall take the estate given in the premises. This is a consequence of the rule already stated, that deeds shall be construed most strongly against the grantor; therefore he shall not be allowed to contradict or retract, by any subsequent part of the deed, the gift made in the premises."

If the granting part of the deed contain proper words of limitation, the *habendum* may be dispensed with altogether. *Kenworthy* v. *Tullis,* 3 Ind. 96.

If the *habendum* is hopelessly repugnant to the limitations in the premises, it will be disregarded. *Edwards* v. *Beall,* 75 Ind. 401; *Farquharson* v. *Eichelberger,* 15 Md. 63. But where the grant is indefinite from its generality in respect to the estate in the lands conveyed which it is intended to create in the grantee, the *habendum* serves to define it. 4 Kent's Com. 468. "Where a person is mentioned as grantee in the premises, and is mentioned together with others in the *habendum,* he alone can take an immediate estate." Elphin. Inter. of Deeds, 215, rule 64. "If both the

premises and the *habendum* contain different express limitations of the estate, the limitation in the *habendum* will, if possible, be considered as explanatory of that in the premises; but if the limitations are repugnant, they will be construed in the manner most beneficial to the grantee." "The *habendum* may extend but not abridge the estate limited in the premises." Elphin. Inter. of Deeds, 217, rule 66.

The *habendum* will be rejected when repugnant to the limitation in the premises, as where the grant in the premises was to A and the heirs of his body, *habendum* to A his heirs and assigns, A took an estate tail. *Hunter v. Patterson,* 142 Mo. 310, 44 S. W. 250. In *Adams* v. *Dunklee,* 19 Vt. 382, a grant to A for his life and the life of B, *habendum* to A and B "for and during their and each of their natural life", the premises and the *habendum* being repugnant, the latter was held to be void and A took a life estate for the life of B, who took nothing.

Sometimes when additional grantees are introduced into the *habendum,* they take in remainder; as where in the premises there was a grant to a mother, *habendum* to her and her children, the mother took a life estate and the children a life estate in the remainder. *Blair* v. *Osborne,* 84 N. Car. 417. "If a grant is to one and his heirs, *habendum* for life, the *habendum* is void, because it gives a lesser estate." Elphin. Inter. of Deeds, 219. The fee granted in the premises can not be cut down to a life estate by the *habendum. Robinson* v. *Payne,* 58 Miss. 690; *Owston* v. *Williams,* 16 U. C. Q. B. 405; *Wager* v. *Wager,* 1 Serg. & R. 374.

We need not undertake an analysis of the *habendum* and the covenants of the deed before us. If they show a purpose to make the children of Jacob and Nancy original stocks of descent, such purpose can not prevail; and so far as there is repugnance between these clauses and the premises, the latter must be given effect.

Vol. 28—39

It must be concluded that the conveyance of Jacob and Nancy Runkle transferred to their grantee, not merely an estate for the joint lives of the grantors and the life of the survivor, but an estate of inheritance, and that their grantee thereby became the owner of the land in fee simple.

Judgment reversed, with instruction to sustain the demurrer to the complaint.