## LAMB ET AL. v. MEDSKER ET AL.

[No. 5,579.    Filed June 9, 1905.]

1. DEEDS.—*Fee Tail.*—*Statute.*—At the common law the word "heirs" was necessary to create a fee-simple title, and the words "heirs of his body," or equivalent words, to create an estate tail, the estate tail being made a fee simple by the statute of 1826 (Acts 1826, p. 50, §5). p. 664.

2. SAME.—*Fee Tail.*—*Words Used.*—A deed "to I. M. and to his wife, J. M., and to the survivor of them and to the legitimate heirs of I. M., if he should have any, either with his present or ·with a future wife lawfully married," and in case of a failure of issue, then over "to the only use, benefit and behoof of said I. M. and his wife, during their natural lives, or the survivor of them, and to said I. M.'s legitimate heirs, and for want of such," then over, creates at the common law an estate tail, and by statute a fee simple.    p. 664.

3. SAME.—*Life Estate.*—"*Heirs.*"—Prior to 1852 a conveyance to a person, omitting the word "heirs," created a life estate only.    p. 665.

4. SAME.—*Use of "Heirs."*—*Limitation.*—The word "heirs" in a deed will be construed as a word of limitation unless it clearly and positively appears that it was used to mean children.    p. 666.

5. SAME.—"*Lawful Issue.*"—*Use of.*—Where a deed is made to I. M. "and to the legitimate heirs of " I. M., "and in case of no such lawful issue" then over "to the heirs of I. M., Sr.," the words "lawful issue" refer to the death of I. M. without heirs and are interchangeable with "legitimate heirs" used previously, and are words of limitation and not of purchase.    p. 666.

6. SAME.—*Granting Clause.*—*Habendum.*—*Conflict.*—Where a deed grants to I. M. and "to the legitimate heirs of said I. M.," the *habendum* will not be allowed to cut down such estate to a life estate, the granting clause controlling the *habendum* in case of conflict.    p. 667.

7. SAME.—*Joint Tenants.*—A deed to a person and his children carries an estate in joint tenancy, but where no children exist the word "children" is construed as a word of limitation, the equivalent of "issue" or "heirs of the body" and creates an estate tail.    p. 668.

From Kosciusko Circuit Court; *Edgar Haymond,* Special Judge.

Action by Mary Lamb and others against Isaac Medsker and others.    From a decree for defendants, plaintiffs appeal.    *Affirmed.*

*Edward Beverstock* and *Stookey & Biggs,* for appellants.

*Wood & Bowser, Brubaker & Son* and *Bertram Shane,* for appellees.

MYERS, P. J.—Appellants in the court below began this suit against appellees for possession of, and to quiet title to, 160 acres of real estate in Kosciusko county, Indiana, basing their cause of action upon a certain deed executed by Henry Ford and Phebe, his wife, to Isaac Minear, Jr., and wife, Jane Minear, on January 22, 1838. Omitting the formal parts, description, and the usual covenants, that part of the deed material to this controversy is as follows: "Witness-eth, that said Henry Ford, for and in consideration of the sum of $400 and other good consideration to him in hand paid by said Isaac Minear, the receipt whereof is hereby acknowledged, hath granted, bargained, sold, conveyed and confirmed, and by these presents doth grant, bargain, sell, convey and confirm unto said Isaac Minear and to his wife, Jane Minear, and to the survivor of them and to the legitimate heirs of said Isaac Minear, if he should have any, either with his present or with a future wife lawfully married, and in case of no such lawful issue then and in that case after the death of both said Isaac Minear and Jane, his wife, then in that case said hereinafter mentioned lands and messuage hereby granted to be considered as a part of the estate of Isaac Minear, Sr., and to be divided among his heirs as such, and to their heirs and assigns forever, a certain tract of land in the county of Kosciusko, in the State of Indiana, aforesaid. * * * Together with all the appurtenances to the only use, benefit and behoof of said Isaac Minear, and his wife, Jane, during their natural lives, or the survivor of them, and to said Isaac's legitimate heirs, and for want of such to the heirs of his father, Isaac Minear, Sr., forever." This deed was properly signed and acknowledged by Ford and wife, and recorded February 20, 1838. On November 1, 1839, Isaac Minear, Jr., and his wife, Jane, Isaac Minear, Sr., his wife joining, by general warranty deed conveyed said real estate to one Hester

Swihart, and through subsequent conveyances the appellees, except John Medsker, came into possession thereof under claim of title. Medsker holds a mortgage covering a part of said real estate, and for that reason is made a party.

1. A construction of the Ford deed will determine the questions here presented. Appellants insist that the deed from Ford to Isaac Minear, Jr., and his wife created a life estate in the grantees, with a contingent remainder in the children then unborn of said grantee Isaac Minear, Jr. Appellees contend that the wording of the deed at common law created in Isaac Minear, Jr., an estate in fee tail, which, under our statute then existing, became a fee simple. The acts of 1826 (Acts 1826, p. 50, §5) abolished all estates tail, "and any person or persons who may hereafter be seized of an estate tail, by devise or grant, shall be deemed to be seized of the same in fee simple absolute." At common law, in order to create a fee simple by deed, it was necessary to use the word "heirs," and if a fee tail was created it was necessary to use in addition to the word "heirs" the words "of the body," or some other words of procreation of equal meaning.

2. The granting clause of the deed now under consideration, in connection with the word "heirs," uses such words of procreation as to indicate the body from which these heirs are to proceed, and, if this theory be correct, under the settled rules of law, Isaac Minear, Jr., and his wife, Jane, took the land in fee simple. Such words as "to A and his heirs, namely, the heirs of his body"—or "of himself lawfully issuing or begotten"—or "of his flesh," or "of his wife begotten,"—or "which he shall happen to have or beget." Also "a devise to J S and his heirs if he should have lawful issue, but if he die without issue then over," would create an estate tail in J S. Also a gift by devise by one to "his children," if he then have none, or "to him and his posterity," or by other words showing an intention to restrain the inheritance to the descendants of

the devisee, would create an estate tail. 1 Washburn, Real Prop. (5th ed.), *77; Hopkins, Real Prop., §§20, 24; *Allen* v. *Craft* (1887), 109 Ind. 476, 58 Am. Rep. 425.

3. The words used in the Ford deed confirming the title to the land in Isaac Minear, Jr.; and his wife, Jane, are positive, and unquestionably vest the life estate in the grantees, if we were to leave out the words "and to the legitimate heirs of said Isaac Minear," for, prior to our statute of 1852 (1 R. S. 1852, p. 232, §14, §3348 Burns 1901, §2929 R. S. 1881), it was necessary to use the word "heirs" in order to create in the grantees an estate of inheritance. *Nelson* v. *Davis* (1871), 35 Ind. 474; *Nicholson* v. *Caress* (1877), 59 Ind. 39.

But when we add to the language used in conveying the title to Isaac Minear, Jr., and his wife, the words, "and to the legitimate heirs of said Isaac Minear, and to their heirs and assigns forever," we have words meeting the requirements of the common law for the transfer of the fee to real estate by deed. True the words "legitimate heirs" have been defined to mean children born in lawful wedlock. Bouvier's Law Dict.; Anderson's Law Dict., 611; *Lytle* v. *Beveridge* (1874), 58 N. Y. 592. "Legitimate" is also defined by Webster to mean lawful; lawfully begotten; born in wedlock. In the Century Dictionary as lawful; of lawful birth; born in wedlock; a legitimate heir.

In *Hochstedler* v. *Hochstedler* (1887), 108 Ind. 506, this language is used: "That the clause of the will devising to the appellee, David Hochstedler, and his sister and brothers, the estate in possession and in remainder, which is created for them, does, under the rule in Shelley's Case, devise an estate in fee. We think the authorities require this concession, for, where a life estate is created in a devisee named, and the same will devises the remainder to devisees, who are named, and their lawful heirs, they, the devisees, take an estate in fee." Citing many authorities.

In *Gonzales* v. *Barton* (1873), 45 Ind. 295, the court

said: "Does the devise to Morey for life, then to his lawful issue, and in default of such issue to his heirs in fee, give to Morey the fee simple? The rule in Shelley's Case has frequently been recognized, and in some instances applied, as a rule of the common law in force in this State. [Citing authorities.] What is the effect of the devise to Morey for life, and after his death to his lawful issue? If the words 'lawful issue' are to be regarded as words of purchase, then Morey took only an estate for his life. But if the words 'lawful issue' are to be regarded as words of limitation, he took a fee simple. If the question could be regarded as one of intention, there would be no difficulty in coming to the conclusion that in this case it was intended that Morey should take a life estate only. But such is not the rule, as may be seen by reference to the cases cited as having been decided by this court. As this rule is a rule which we obtain as a part of the common law, it is proper to look to the English courts for cases to which the rule has been applied." The court, after reviewing many English cases, applied the rule in Shelley's Case, and held that Morey took the fee.

4. We do not question that the word "heirs," which has a fixed legal meaning as a word of limitation, when used in connection with other words of an instrument, may not be construed as meaning children, or be given a meaning different from that assigned it by law, but before the court will give the word such a construction it must clearly and positively appear that it was so used. *Hochstedler* v. *Hochstedler, supra; Chamberlain* v. *Runkle* (1902), 28 Ind. App. 599; *Teal* v. *Richardson* (1903), 160 Ind. 119; *Allen* v. *Craft, supra; Taney* v. *Fahnley* (1890), 126 Ind. 88.

In the case at bar the language of the deed will not warrant us in giving the word "heirs," or the phrase "legitimate heirs of Isaac Minear, Jr.," any other meaning than that assigned them by law.

5. But it is said the words "in case of no such lawful

issue," and the language of the *habendum,* when read into the deed,· are sufficient evidence of the intention of the grantor to authorize the court to construe the words "legitimate heirs" as words of purchase, and not words of limitation. "Lawful issue," as here used, has reference to the death of Isaac Minear, Jr., without issue, and in that case, to the heirs of Isaac Minear, Sr. They are used interchangeably with the words "legitimate heirs," and are subject to the same construction. We do not want to be understood as saying they are always so used, for of course they are not; but in this particular case we think the word "issue" refers to those before mentioned by the grantor, and must be taken to mean the heirs of the body of Isaac Minear, Jr. And therefore, as here used, the word "issue" is a word of limitation. Under the old English law the word "issue," when a word of limitation, means lineal descendants indefinitely, hence, heirs of the body. 3 Jarman, Wills (5th Am. ed.), 200.

"In England, before the wills act of 1837, the phrases, 'if he have no issue,' 'if he die without leaving issue,' 'leave no issue,' 'for want of issue,' 'in default of issue,' 'if he die without issue,' and other words of similar import, unexplained by the context, when made the contingency in devises of a limitation over of real property, were invariably construed to mean an indefinite failure of issue, and to create an estate tail." *Hertz* v. *Abrahams* (1900), 110 Ga. 707, 36 S. E. 409, 50 L. R. A. 361.

6. As to the *habendum,* it is a rule of law that every part of the deed should be examined and construed as a whole. But if the *habendum* be found to be in conflict with the granting clause, the *habendum* must give way, upon the theory that the deed shall be construed most strongly against the grantor, in order to prevent a contradiction or retraction by a subsequent part of the deed or a limitation being placed upon a right which had been granted and given in the premises. This question has been thoroughly dis-

cussed by this court in the case of *Chamberlain* v. *Runkle, supra,* and the reasoning there applies forcibly to the question here presented. If the grant in the deed now under consideration was expressed in such general terms as to admit of various meanings, then the *habendum* might be and could properly be used as explaining the intention contained in the words of the granting part of the deed, but never to contradict the estate granted in the premises, unless the "words so introduced into the deed, after the words of conveyance and warranty, in order so to limit the estate, * * * be apt words for the purpose, so that, when taken in connection with the granting words of the deed, the meaning . * * * be clear and irresistible on the face of the deed that a life estate only was intended." But as the words used in the granting clause will not bear a construction limiting the estate granted to Isaac Minear, Jr., to a life estate, the words in the *habendum* will not be allowed to cut down the original grant. *Marsh* v. *Morris* (1893), 133 Ind. 548.

7. In the case at bar, it appears that the first child was born to Isaac Minear, Jr., and wife, Jane, in the year 1841, and died about four years thereafter. The appellants are children and grandchildren of Isaac Minear, Jr., by his second wife. Therefore, at the time of the execution of the Ford deed and the Swihart deed, Isaac Minear, Jr., had no children or heirs or issue as the fruits of his first marriage.

In *Moore* v. *Gary* (1897), 149 Ind. 51, the court said: "At common law a devise to one and his children carried an estate in joint tenancy when the person named had children living at the time of the devise, but when no such children existed, the term 'children' was construed as a word of limitation and as equivalent to 'issue' or 'heirs of his body,' and the parent took an estate tail." Cases cited.

In our opinion, there is no error in the record. Judgment affirmed.