McCLLEN ET AL. *v.* SEHKER ET AL.

[No. 9,892. Filed June 5, 1919.]

1. APPEAL.—*Record.*—*Change of Venue.*—*Failure to Authenticate Paragraphs of Complaint.*—*Questions Presented.*—Where, upon a change of venue being taken, the clerk of the court in which the action originated failed to certify or authenticate paragraphs of complaint, they were not in the record, and assignments of error on rulings on motions and demurrers addressed thereto present no questions for review on appeal. p. 436.

2. WILLS.—*Construction.*—*Use of Words.*—*"Heirs."*—*Rule in Shelley's Case.*—Where a will uses the word "heirs" in its ordinary legal sense, a fee is vested in the first taker under the rule in Shelley's case. p. 439.

3. WILLS.—*Construction.*—*"Heirs."*—Although the word "heirs," as used in a will, may mean children, such meaning cannot be ascribed to it unless it very clearly appears that the word was used in that sense. p. 439.

4. WILLS. — *Construction.* — *Estates Created.* — *Use of Words.* — *"Heirs."*—Superadded words in a will which merely describe or specify the incidents of the estate created by such a word of limitation as "heirs" do not cut down the interest of the devisee. p. 440.

5. WILLS.—*Construction.*—*Testator's Intention.*—In construing a will, the court should ascertain and carry out the testator's intention whenever it can be done without overthrowing a well-established principle of law, but even a clear legal intention of the testator cannot be permitted to contravene the settled rules of law by depriving an estate of any of its essential legal attributes. p. 441.

6. WILLS.—*Construction.*—*Rule in Shelley's Case.*—Where land was devised to testator's son "to be held by him during his natural life only, then to his legal heirs," with a further provision that the son should not dispose of it, but at his death it should belong to his legal heirs during their life, the son took a fee under the rule in Shelley's case. p. 444.

From St. Joseph Superior Court; *George Ford,* Judge.

Action by John F. McCllen and others against Frank C. Sehker and others. From a judgment for defendants, the plaintiffs appeal. *Affirmed.*

*Darrow & Rowley* and *McInernys, Yeagley & Mc-Vicker*, for appellants.

*H. W. Sallwasser, W. A. McVey* and *H. B. McLane*, for appellees.

McMahan, J.—This action was commenced by the appellants in the LaPorte Superior Court. The complaint was in three paragraphs. Appellees' motions to strike out parts of the second and third paragraphs were sustained, as were also demurrers to each paragraph. An amended second paragraph of complaint was filed, and then on motion of appellants the cause was venued to the St. Joseph Superior Court.

An amended first paragraph of complaint was filed in the St. Joseph Superior Court. The first, second, third, fourth, seventh and eighth assignments of errors relate to the action of the court in sustaining the motions and demurrers addressed to the second and third paragraphs of complaint. Appellees insist that these paragraphs of complaint, both of which were filed in the LaPorte Superior Court, are not in the record, and that said assignments present no questions for our determination. Neither of said paragraphs of complaint was certified to nor authenticated by the clerk of the LaPorte Superior Court on change of venue. The record in this case is identical with the record in *Consolidated Stone Co.* v. *Staggs* (1905), 164 Ind. 331, 73 N. E. 695, and on the authority of that case we are forced to hold that the second and third paragraphs of the amended complaint are not in the record.

The amended first paragraph of complaint alleges that John McCllen died testate, the owner in fee of the real estate in controversy; that the last will and testament of said McCllen was admitted to probate in

the circuit court of LaPorte county in March, 1889; that item No. 2 of said will reads as follows:

"Second. I give, devise and bequeath to my beloved wife, Susannah McCllen, and my beloved son, Schuyler F. McCllen, all the personal property and real estate I may be seized at the time of my death, to share equal and alike, my son's share to be held by him during his natural life only, then to his legal heirs and no part of the following real estate to be disposed by him (we omit description). It is my will and intention that my son shall not dispose of any of the above described real estate, but at his death shall belong to his legal heirs during their life."

It is also alleged that at the date of the execution of said will there were living three children of said Schuyler F. McCllen, namely, John F., Anna and Jesse McCllen; that there were afterwards born to him a daughter, Elizabeth, and a son, Chester William; that the said children are the sole and only legal heirs of said Schuyler F. McCllen, who died intestate in March, 1915; that they are the persons referred to in the said will as the legal heirs of Schuyler F. McCllen, and are such heirs, and as such are the owners under the provisions of said will as tenants in common of the undivided one-half of the real estate described, each being the owner of a one-tenth interest therein. That Susannah McCllen died intestate in March, 1894, the owner of the real estate so devised to her; that Schuyler F. McCllen was the sole and only heir of Susannah, and as such inherited from her the share of said lands devised to her by said will; that in April, 1895, said Schuyler F. Mc-

Cllen made a deed of conveyance to George H. Service, describing all of said lands, and that under the said deed to George H. Service appellee Lahker, by mesne conveyance, is claiming the title to the whole of said real estate; that in 1907 said Lahker executed a mortgage thereon to Hart L. Weaver, who has since died, and that the appellees other than Lahker are the executors of the last will and testament of Hart L. Weaver, and are claiming to hold a mortgage lien upon all of said real estate, and are asking that the title to one-half of said real estate be quieted in appellants, and for partition.

Appellee Lahker filed a separate demurrer to this amended paragraph of complaint, and the other appellees filed a joint demurrer to it. Both of these demurrers were sustained, and appellants excepted, and, refusing to plead further, judgment was rendered accordingly, and against them.

The fifth and sixth errors assigned challenge the ruling of the court sustaining the demurrers to the amended first paragraph of complaint. The only question presented by these assignments is, Did Schuyler F. McCllen take an estate for life in an undivided one-half of his father's real estate under item 2 of the will, hereinbefore set out? Does the rule in Shelley's case (1793), 1 Coke 88, apply? If so, the cause must be affirmed; otherwise it must be reversed.

Appellants contend that the language used in the will shows that the intention of the testator was to give to his son Schuyler a life estate and the remainder over to the children of the son; that the words "legal heirs" in the expression "then to his legal heirs" means the children of Schuyler F. McCllen born in lawful wedlock.

Where a deed· or will uses the word "heirs" and uses it in its ordinary legal sense, a fee is vested in the first taker.  This is the effect and force of 2. the rule in Shelley's case, and that rule enters into our law as a rule of property, and in all cases when it is applicable we must enforce it.  The word "heirs" when used in a deed or will is one of great power, and its force and effect· is not overcome or impaired by the mere use of negative or restraining words.  Fearne declares that the "most positive direction" will not defeat the operation of the rule in Shelley's case.  2 Fearne, Remainders §435.  While this statement may be too strong under the doctrine of some of the later cases, it is certain that the mere use of negative words cannot restrain or impair the force of the word "heirs."  While it is true 3. that the word "heirs" may mean children, it is also true that this meaning cannot be assigned to the word unless it very clearly appears that it was used in that sense.  *Ridgeway* v. *Lanphear* (1885), 99 Ind. 251.  Lord Redesdale, in *Jesson* v. *Wright* (1820), 2 Bligh 1, 57, said: "The rule is, that technical words shall have their legal effect, unless, from subsequent inconsistent words, it is very clear that the testator meant otherwise."  Lord Denman said: "Technical words or words of known legal import, must have their legal effect, even though the testator uses inconsistent words, unless those inconsistent words are of such a nature as to make it perfectly clear that the testator did not mean to use the technical words in their proper sense."  *Doe* v. *Gallini* (1833), 5 Barn. and Adol. 621.  "Conjecture, doubt or even equilibrium of apparent intention will not suffice."  2 Redfield, Wills (2d ed.) 67.

Superadded words which merely describe or specify
    the incidents of the estate created by such a
4.    word of limitation as "heirs" do not cut ·down
    the interest of the devisee. *Shimer* v. *Mann*
(1885), 99 Ind. 190, 50 Am. Rep. 82.

The Supreme Court in *Allen* v. *Craft* (1887), 109
Ind. 476, 9 N. E. 919, 58 Am. Rep. 425, said: "We
have no doubt that a clause creating an estate in fee
may be so modified by other clauses as to cut down
the estate to one for life, but to have this effect the
modifying clauses must be as clear and decisive as
that which creates the estate.   *   *   *   Strong as is
the word 'heirs,' it may be read to mean children, if
the context decisively shows that it was employed in
that sense by the testator.   *   *   *   But there must
be no doubt as to the intention of the testator to affix
to the word 'heirs' a meaning different from that as-
signed it by law."

In construing a will we should keep in mind that the
first taker is the object of the testator's bounty.   The
will involved in this appeal cannot be compared with
those involved in *Granger* v. *Granger* (1897), 147 Ind.
95, 44 N. E. 189, 46 N. E. 80, 36 L. R. A. 186, and
*Conger* v. *Lowe* (1890), 124 Ind. 368, 24 N. E. 889,
9 L. R. A. 165, cited by appellants.   Appellants insist
that the rule of Shelley's case does not apply for the
reason that there are two distinct devises, one to the
son Schuyler for life and another to the "legal heirs"
of Schuyler.

Appellants say that we must ascertain the inten-
tion of the testator, and that this intention must rule
and control in carrying out his will, even though the
words used by the testator had a different meaning
technically than that which was intended by the tes-
tator.

However prominent a place in the construction of wills the intention of a testator may have, such intention can never change the law nor take the place of the legal formalities required by law. The court, in construing a will, should aim to ascertain the intention of the testator and to carry out that intention whenever it can be done without overthrowing a 'well-established principle of law. But "even a clear intention of the testator cannot be permitted to contravene the settled rules of law by depriving any estate of any of its essential legal attributes." *Mulvane* v. *Rude* (1896), 146 Ind. 476, 45 N. E. 659. See, also, *Teal* v. *Richardson* (1903), 160 Ind. 119, 66 N. E. 435; *Waters* v. *Lyon* (1895), 141 Ind. 170, 40 N. E. 662; *Lee* v. *Lee* (1910), 45 Ind. App. 645, 91 N. E. 507; *Burton* v. *Carnahan* (1906), 38 Ind. App. 612, 78 N. E. 682; *Chamberlain* v. *Runkle* (1902), 28 Ind. App. 599, 63 N. E. 486.

As said by the court in *Siceloff* v. *Redman's Admr.* (1866), 26 Ind. 251, 262: "It would seem apparent that the testator intended that the heirs should take directly from him, as purchasers, and not by descent from the ancestor; yet, by the technical meaning applied to the word heirs, under the rule in *Shelley's* case, this apparent intention is denominated a presumed intent, and is not allowed to control the technical meaning of the word heirs, or in other words, despite the apparent intent of the testator, the rule gives the fee to the ancestor."

As said by the Supreme Court in *Biggs* v. *McCarty* (1882), 86 Ind. 352, 44 Am. Rep. 320: "It is not always the presumed or actual intention of the testator, but, as contra-distinguished therefrom, his legal intention, that must be enforced. The application of

the rule in Shelley's case sometimes unquestionably defeats the intention and actual purposes of the testator; yet the rule has been so long adhered to in Indiana that it must be regarded as the law here until it is changed by the Legislature."

In *Jordan* v. *Adams*, 5 Gray, Cases on Property 99, the court said: "When once the donor has used the terms 'heirs,' or 'heirs of the body,' as following on an estate of freehold, no inference of intention, however irresistible, no declaration of it, however explicit, will have the slightest effect. The fatal words once used, the law fastens upon them, and attaches to them its own meaning and effect as to the estate created by them, and rejects, as inconsistent with the main purpose which it inexorably and despotically fixes on the donor, all the provisions of the will which would be incompatible with an estate of inheritance, and which tend to show that no such estate was intended to be created; although all the while, it may be as clear as the sun at noonday that by such a construction the intention of the testator is violated in every particular."

A careful study of the Indiana cases discloses that the rule in Shelley's case has been applied in the following cases: *McCray* v. *Lipp* (1871), 35 Ind. 116; *Andrews* v. *Spurling* (1871), 35 Ind. 262; *Gonzales* v. *Barton* (1873), 45 Ind. 295; *Smith, Exr.,* v. *McCormick* (1874), 46 Ind. 135; *King* v. *Rea* (1877), 56 Ind. 1; *Fletcher* v. *Fletcher* (1882), 88 Ind. 418; *Shimer* v. *Mann, supra; Hochstedler* v. *Hochstedler* (1886), 108 Ind. 506, 9 N. E. 467; *Allen* v. *Craft, supra; Taney* v. *Fahnley* (1890), 126 Ind. 88, 25 N. E. 882; *Lane* v. *Utz* (1892), 130 Ind. 235, 29 N. E. 772; *Reddick* v. *Lord* (1892), 131 Ind. 336, 30 N. E. 1085; *Perkins* v. *McCon-*

*nell* (1894), 136 Ind. 384, 36 N. E. 121; *Waters* v. *Lyon, supra; Bonner* v. *Bonner* (1902), 28 Ind. App. 147, 62 N. E. 497; *Chamberlain* v. *Runkle, supra; Teal* v. *Richardson, supra; Lamb* v. *Medsker* (1905), 35 Ind. App. 662, 74 N. E. 1012; *Burton* v. *Carnahan, supra; Lee* v. *Lee, supra; Newhaus* v. *Brennan* (1912), 49 Ind. App. 654, 97 N. E. 938; *Gibson* v. *Brown* (1916), 62 Ind. App. 460, 110 N. E. 716, 112 N. E. 894.

The court refused to apply the rule in the following cases for the reason that the facts involved did not invoke its application. *Sordem* v. *Gatewood* (1848), 1 Ind. 107; *Doe* v. *Jackman* (1854), 5 Ind. 283; *Small* v. *Howland* (1860), 14 Ind. 592; *Hull* v. *Beals* (1864), 23 Ind. 25; *Siceloff* v. *Redman's Admr., supra; Prior* v. *Quackenbush* (1868), 29 Ind. 475; *Nelson* v. *Davis* (1871), 35 Ind. 474; *Owne* v. *Cooper* (1874), 46 Ind. 524; *Helm* v. *Frisbie* (1877), 59 Ind. 526; *Locke* v. *Barbour* (1878), 62 Ind. 577; *Stilwell* v. *Knapper* (1880), 69 Ind. 558, 35 Am. Rep. 240; *McMahan* v. *Newcomer* (1882), 82 Ind. 565; *Biggs* v. *McCarty, supra; Ridgeway* v. *Lanphear, supra; Fountain County Coal, etc., Co.* v. *Beckleheimer* (1885), 102 Ind. 76, 1 N. E. 202, 52 Am. Rep. 645; *Hadlock* v. *Gray* (1885), 104 Ind. 596, 4 N. E. 167; *Millett* v. *Ford* (1887), 109 Ind. 159, 8 N. E. 917; *Conger* v. *Lowe, supra; Jackson* v. *Jackson* (1891), 127 Ind. 346, 26 N. E. 897; *Earnhart* v. *Earnhart* (1891), 127 Ind. 397, 26 N. E. 895, 22 Am. St. 652; *Burns* v. *Weesner* (1893), 134 Ind. 442, 34 N. E. 10; *McIlhinny* v. *McIlhinny* (1894), 137 Ind. 411, 37 N. E. 147, 24 L. R. A. 489, 45 Am. St. 186; *Granger* v. *Granger, supra; Adams* v. *Merrill* (1910), 45 Ind. App. 315, 85 N. E. 114, 87 N. E. 36.

It is argued that the use of the word "only" in the

phrase, "to be held by him during his natural life only," means nothing else than a life estate, not more than a life estate. This would doubtless be true were it not followed by the words "then to his legal heirs." See *Burton* v. *Carnahan, supra,* where the clause in the will was "to be held by her during her natural life and no longer." The rule in Shelley's case has become so firmly established as a rule of property in this state that when a testator makes use of the technical words "heirs" or "heirs of his body," he is conclusively presumed to have used them in their technical sense, unless it clearly and unequivocally appears otherwise.

We hold that under the will of John McCllen, Schuyler F. McCllen took a fee in one-half of the real estate in controversy, and that there was no error in sustaining the demurrer to the first paragraph of the amended complaint.

Judgment affirmed.